## Wytheville.

GEO. STALLARD, ALIAS CHAS. G. COX, V. COM. OF VA.

June 28, 1921.

1. BURGLARY—*Entering Without Breaking—Sufficiency of Evidence —Case at Bar.*—In a prosecution for burglary the evidence though conflicting, warranted the jury in finding that a saddle found near defendant's residence was the property of the prosecuting witness; that this saddle had been seen by a witness in defendant's possession; that the saddle was stolen property; that defendant's possession was recent; that defendant failed to give a reasonable account of how his possession was acquired; but gave a false account; that the saddle was obtained by entry of the barn of prosecuting witness in the night time, as charged in the indictment; and that defendant was guilty of the larceny of the saddle.

   *Held:* Sufficient to sustain a verdict of guilty.

2. APPEAL AND ERROR—*Conflicting Evidence.*—Where the jury find a verdict of guilty upon conflicting evidence, an appellate court is not at liberty to disregard their verdict.

3. BURGLARY—*Possession of Stolen Goods.*—The law in Virginia is well settled that the possession of stolen goods is of itself not even *prima facie* evidence of housebreaking or of burglary. But when goods have been obtained by means of a burglary or housebreaking, the fact of such possession is a most material circumstance to be considered by the jury, and when, in addition to such possession, other inculpatory circumstances are proved, such, for example, as the refusal of the accused to give any account, or his giving a false account, of how he came by the goods, such proof will warrant a conviction.

4. BURGLARY—*Instructions—Possession of Stolen Property.*—In a prosecution for burglary by entering without breaking, the court instructed the jury that if the property owned by the prosecuting witness was stolen and recently thereafter found in the exclusive possession of the prisoner, then such possession of itself affords sufficient ground for a presumption of fact that he was the thief, and makes it incumbent on him to account for such possession consistently with his innocence. De-

fendant objected to this instruction on the ground that it leaves out the phrase "unexplained possession," and that it "is purely an instruction on the offense of larceny," and therefore inapplicable.

*Held:* No error, though the instruction might well have been differently framed.

5. BURGLARY—*Larceny Involved in Charge of Burglary.*—In a charge of entering a barn in the night time and stealing property therefrom, larceny is necessarily involved.

6. LARCENY—*Possession of Stolen Property.*—The recent and exclusive possession of stolen property will warrant a conviction of larceny, unless the defendant affords a reasonable account of his possession. This burden of explanation is imposed upon a prisoner found in the possession of stolen property, when such possession is proven to be recent and exclusive. If this explanation is not forthcoming, conviction of larceny is justified.

7. LARCENY—*Burglary—Recent Possession.*—An instruction in a prosecution for burglary that stolen property found in the exclusive possession of a person two months after being stolen is recent possession, is erroneous, but does not prejudice the prisoner when his possession of the stolen property was undoubtedly recent.

Error to a judgment of the Circuit Court of Scott county.

*Affirmed.*

The opinion states the case.

*W. S. Cox,* for the plaintiff in error.

*John R. Saunders, Attorney General*; *J. D. Hank, Jr., Assistant Attorney General,* and *Leon M. Bazile, Second Assistant Attorney General,* for the Commonwealth.

SAUNDERS, J., delivered the opinion of the court.

The plaintiff in error, Geo. Stallard, was indicted, tried, and convicted in the Circuit Court of Scott county, under an indictment which charged that the said Stallard did unlawfully and feloniously enter in the night time, without break-

ing, the barn of one H. C. Sivert, etc., with intent to feloniously take, steal and carry away the goods and chattels of the said Sivert, then and there being in the said barn, and did feloniously steal, etc., one saddle, one riding bridle, and one blind bridle, all the property of the said Sivert, and of the value respectively, etc.

Upon the trial the jury found the prisoner guilty, as charged in the indictment, and fixed his punishment at six months in the county jail, with an accompanying fine.

The accused moved to set aside the verdict because contrary to the law and the evidence, and for other errors. This motion the court overruled, and entered judgment in accordance with said verdict. To this judgment a writ of error was awarded.

The petitioner in error insists that the court erred in two respects:

I. In giving certain instructions for the Commonwealth.

II. In refusing to set aside the verdict as contrary to the law and the evidence.

These assignments will be considered in reverse order.

[1] The evidence submitted on behalf of the prosecution may be briefly summarized. Sivert testified that he lived in Scott county; that his barn was entered on the night of August 8, 1919, and the property taken was a Buena Vista saddle (red leather), and two bridles. That about a month after the theft, from information received, he swore out a search warrant against the defendant, Stallard, who lived in another portion of the county. That upon arriving at the latter's house in the company of the sheriff, and apprising him of their mission, Stallard said: "Go ahead, and search. I knew you were coming." That nothing was found in the house, and he followed a little path to an outhouse. That at that point a man's tracks began which "led to a woods, and returned." That the tracks were not very plain; that he followed these tracks

into the woods, and found his saddle and riding bridle covered with leaves. That it was almost forty-five yards from Stallard's house to the point where the goods were discovered; that the defendant disclaimed any knowledge of the saddle, or bridle; that he identified his saddle, and that there was a rubbed place on the back "which left no doubt about its being his saddle;" that he identified the bridle by a wire "attached to one end of the rein, and onto the bit."

It may be said in this connection that this evidence, standing alone, was not sufficient to raise more than a suspicion against defendant, and did not establish "exclusive possession."

S. T. Nickels, for the State, testified that on the evening of August 9, 1919, which was the evening of the day following the housebreaking, he saw Stallard and another man who gave his name as Boyd, and said he lived in Ohio (this subsequently proved to be false, his name was Gilliam, and he was a brother-in-law of Stallard). Proceeding, the witness said that Stallard had a saddle which he was carrying in a sack. Witness describes the saddle as a Buena Vista saddle, that is a solid, or quilted seat saddle, and of a tan color.

Rhea Carter, who was with Nickels, states that he did not examine the saddle, but saw a saddle with a solid seat, a quilted seat saddle, that Stallard was carrying in a sack.

Will Dockery, another witness for the State, says that he knew the defendant; that not long before Sivert came to the neighborhood, and found his saddle, he saw Stallard riding a Buena Vista saddle; that he spoke to him, and noticed the saddle particularly, as it resembled his at a distance; that when he looked at the saddle, he found that it was not his, but that it was a Buena Vista saddle. The witness adds: "I took particular notice of it being a Buena Vista saddle, because there were no Buena Vista saddles in that neighborhood, except mine. I afterwards saw the

saddle Mr. Sivert said was his. This was the same saddle, or like it, the defendant was riding when I saw him. I noticed a leather about the girth that attracted my attention, when the defendant was riding it, and I noticed this same leather on the saddle after Mr. Sivert had found it."

J. E. Quillen was the deputy sheriff who arrested the defendant. He saw Sivert return from the woods with the saddle, and heard the defendant deny that it was his. He did not hear the defendant tell Sivert "to go ahead, and search, that he knew he was coming."

The defendant put on the stand his brother-in-law, Willard Gilliam. This witness stated that his brother, (the defendant), and Emmett Gilliam sold the saddles seen by Nickels and Carter, at the time mentioned in their testimony, to him and a man named Esco G. Kilgore, and that he had the saddle at the livery stable at the time, a tan saddle with a solid quilted seat, and that on the day mentioned by the witness, Dockery, the defendant was riding his (*i. e.* the witness') saddle. Emmett Gilliam was the man who gave his name as Boyd.

The wife of the defendant also testified. She stated that prior to the time Sivert found his saddle in the woods, her husband and Emmett Gilliam bought two saddles at Clinchport, and sold them to Kilgore and William Gilliam; that she knew nothing of the saddle found by Sivert; that it had never been there before, and that she had never seen it; that her husband did not tell Mr. Sivert "to go ahead, and search, etc.," or anything of the kind. On cross examination witness says she did not go to Clinchport, and only knew what she was told "when they came back."

The defendant testified, denying that he took Mr. Sivert's saddle, or that he ever was in his section of the county; that he and Emmett Gilliam bought the saddles which they had from one Dick Miner in Clinchport; that they sold them to Esco G. Kilgore, and Willard Gilliam; that

he had a subpoena issued for Kilgore who was, he thought, somewhere in Wise county, and also a subpoena for Dick Miner who was at Applachia; that he was riding the saddle sold Willard Gilliam when Dockery saw it; that he did not tell Sivert "to go ahead, and search, etc." On cross examination he denied that he stated to the justice on the preliminary hearing, that he bought the saddle from a horse trader whose name he did not know; that he did not know why Emmett Gilliam said his name was Boyd; that he had his counsel have subpoenas issued for Miner and Kilgore, and the record would show it.

These parties, Miner and Kilgore, do not appear to have testified, nor was any request for postponement made on account of their absence. On rebuttal the State proved by Sivert, Dockery, and one Kinkaid, that they were present when the defendant testified before the justice on the preliminary hearing, and that he stated that "they got their saddles from a horse trader, or horse swapper, at Clinchport, but they did not know his name."

Upon this evidence the jury were justified in reaching the following conclusions:

I. That the saddle found by Sivert was his property.

II. That the saddle seen by Dockery was Sivert's saddle.

III. That this saddle at that time was in the exclusive possession of the defendant.

IV. That the saddle was stolen property, and defendant's possession was recent.

V. That the defendant failed to give a reasonable account of how his possession was acquired.

VI. That the defendant was guilty of the larceny of the saddle.

VII. That the goods were originally obtained by entry of Sivert's barn in the night time.

VIII. That the defendant gave a false account of how he came by the goods.

[2] IX. That the prisoner was guilty, as charged in the indictment.

The jury did reach the conclusion of guilt upon the conflicting evidence presented, and this court, under settled principles, is not at liberty to disregard their verdict.

[3] "The law in Virginia is well settled that the possession of stolen goods is of itself not even *prima facie* evidence of housebreaking or burglary." *Tyler's Case,* 120 Va. 870, 91 S. E. 172.

"The rule in Virginia, however, is that * * * * when goods have been obtained by means of a burglary, or housebreaking, the fact of such possession is a most material circumstance to be considered by the jury, and when in addition to such possession, inculpatory circumstances are proved, such for instance as the refusal of the accused to give any account, or his giving a false account of how he came by the goods, such proof will warrant a conviction." *Tyler's Case, supra,* 120 Va. p. 870, 91 S. E. 172. "The exclusive possession of money recently stolen, unaccompanied by a reasonable account of how the possession was acquired, creates the presumption that the possessor is the thief." *Porterfield's Case,* 91 Va. 801-805, 22 S. E. 352, 354.

See also the cases of *Branch* v. *Commonwealth,* 100 Va. pp. 837-839, 41 S. E. 862; *Gravely* v. *Commonwealth,* 86 Va. 396, 10 S. E. 431.

[4-6] Reverting now to the instructions complained of, the first instruction is as follows:

"The court instructs the jury that if they believe from the evidence beyond all reasonable doubt that the saddle and bridle owned by H. C. Sivert were stolen, and were recently thereafter found in the exclusive possession of the prisoner, then such possession of itself affords sufficient ground for a presumption of fact that he was the thief, and makes it incumbent on him to account for such possession consistently with his innocence."

The defendant complains of this instruction on the ground that it leaves out the phrase "unexplained possession," and that it "is purely an instruction on the offense of larceny," and therefore inapplicable.

It is not perceived why the court did not give this instruction in the usual form, but it is not considered that the defendant was prejudiced by the form in which it was actually submitted. Larceny was necessarily involved in the defendant's act. The jury might have convicted the prisoner of larceny only, upon the evidence of recent unexplained and exclusive possession of stolen goods, but when to the evidence of such possession was added the evidence that the goods were initially acquired by entry of Sivert's barn in the night time, and a false account of how defendant came by the goods, the jury were justified in convicting the prisoner of the higher offense. Hence this instruction was proper in this case.

The recent and exclusive possession of stolen property will warrant a conviction of larceny, unless the defendant affords a reasonable account of his possession. This burden of explanation is imposed upon a prisoner found in the possession of stolen property, when such possession is proven to be recent and exclusive. If this explanation is not forthcoming, conviction of larceny is justified.

The instruction under consideration tells the jury in the concluding sentence that if they have reached the conclusion beyond a reasonable doubt from the evidence, that Sivert's property was stolen, and recently thereafter was found in the exclusive possession of defendant, then such possession called for an explanation of same consistent with his innocence, that is to say, for a reasonable explanation of his possession. There is no error in this instruction, though it might well have been differently framed. Practically the same instruction was sustained in *Porterfield* v. *Commonwealth*, 91 Va. pp. 801-805, 22 S. E. 352, a housebreaking case.

[7] The other instruction complained of is the following:

"The court further instructs the jury that what is such recent possession as to raise a presumption against the prisoner is a question for the jury, and depends upon the nature of the property, and other circumstances of the particular case, that in the application of the rule without undertaking to define what is recent possession, the court tells the jury that stolen property found in the exclusive possession of a person two months after being stolen is recent possession."

The complaint is of the concluding portion of this instruction, which should undoubtedly have been omitted. But the instruction, conceding fully the error noted, did not operate to the prejudice of the prisoner. The time when he was found in exclusive possession of Sivert's saddle, was less than one month after the housebreaking, and was undoubtedly recent, in any view that might be taken.

Under the circumstances, there is no reversible error in the instruction, though it should not have been given in the form complained of.

The instructions given at the instance of the defendant on the subject of presumption of innocence, reasonable doubt, suspicion of guilt, and exclusive possession, are fully and favorably stated. The jury was expressly told that the mere possession of stolen property is not *prima facie* evidence of housebreaking.

We find no error in the judgment complained of, and it is affirmed.

*Affirmed.*