# Richmond

## CURTIS BARNES AND WILLIAM E. THORNTON v. COMMONWEALTH OF VIRGINIA.

March 13, 1950.

Record No. 3645.

Present, All the Justices.

The opinion states the case.

*Broudy & Broudy* and *Fred E. Martin,* for the plaintiffs in error.

*J. Lindsay Almond, Jr., Attorney General,* and *Frederick T. Gray, Special Assistant,* for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

Curtis Barnes and William E. Thornton, hereinafter referred to as defendants, were indicted and tried under an indictment which charged them with the larceny of "certain cable" of the value of $392 of the goods and chattels of the Welding Shipyard, Inc. Upon arraignment they pleaded not guilty and agreed to be tried jointly. There were two trials. Upon the first trial the jury were unable to reach a verdict. Upon the second trial the jury found the defendants guilty and fixed their punishment at three years each in the penitentiary. A motion to set aside the verdict on the ground that it was contrary to law was overruled, and judgment was accordingly entered. To this judgment a writ of error was awarded.

The defendants concede that the evidence was sufficient to sustain their convictions, but insist that the verdict was reached as a consequence of erroneous instructions by the court. Specifically they contend that the trial court erred in granting two instructions, C-2 and C-3, for the Commonwealth, and in refusing to grant instruction D-2 in the language tendered by them.

The evidence may be briefly summarized. On the part of the Commonwealth, it was shown that on the night of

November 17, 1948, between eleven and twelve o'clock, the two defendants while riding in an automobile operated by Barnes were stopped by two police officers because one of the officers desired to talk to Barnes with reference to a previous traffic violation. In the rear of the automobile, a seven-passenger Cadillac sedan, were four large rolls or coils of "Standard Navy, 30 millimeter, 2 conductor armored cables, approximately 1¾ inches in diameter," covered "with a piece of cloth." The coils were approximately three feet in diameter and contained 292 feet of cable. One coil was introduced in evidence as an exhibit, together with tags from all four coils. The value of the cable was placed at $393. Upon discovery of the cable, Barnes and Thornton were placed under arrest and charged with grand larceny.

An employee of the Welding Shipyard, Inc., identified the four coils of cable as property of his employer, which he had tagged on November 17th. The tags in evidence were in his handwriting. Another employee who was in charge of the Shipyard dump, whose duties were to keep the dump free of trespassers and the material thereon burned off, stated that he had never given any one permission to go thereon.

The Welding Shipyard, Inc., in connection with its work in dismantling several aircraft carriers, had maintained on its premises for several years a dump for scrap material. Its plant security manager testified that there was placed on the dump a sign reading "Welding Shipyard. No Trespassing;" that there were two watchmen on duty the night the cable was taken; that there was a guardhouse approximately 500 feet from the edge of the dump; and that the cable was on a rack in the cable storage area between 400 and 425 feet from the guardhouse.

Testimony on behalf of the defendants established their good character. They had worked as car riders for the Virginian Railway, which runs in close proximity to the Shipyard, for a number of years. They were considered as better than average employees. The defendants testi-

fied that they, together with others, had frequently "picked over" the dump of the Shipyard for scrap material; that they had previously removed long pieces of cable similar to that found in their possession; and that the persons in charge of the Shipyard had acquiesced in this practice for some years.

Thornton further stated that the foreman of the Shipyard had told a group of men, including himself, that they could take anything on the dump as long as they "did not bother lumber." He said that on the night of his arrest, he and Barnes had finished their work about ten o'clock and went over to the dump where they found the cable mixed in with old brick and other rubble; that they placed the cable in the rear of Barnes' car, on the floor, and covered it partially with the seat cover; that they were on their way to Barnes' home when they were stopped and arrested; and that the "No Trespassing" sign on the dump was not placed there until after their arrest.

Barnes said that he had "an aged mother for whom he is the ·sole support." Thornton testified that he had "a wife and three small children."

In rebuttal, the foreman of the Shipyard testified that he had never given anyone permission to go on the dump,ˉ and a guard testified that he "had chased people off."

The trial court gave three instructions at the request of the Commonwealth. The first instruction C-1 defined petit and grand larceny, and set out the punishment therefor. Instructions C-2 and C-3 were granted over the vigorous objections of the defendants. They read as follows:

C-2. "The court instructs the jury, that if property be stolen, and recently thereafter be found in the exclusive possession of the prisoner, then such possession of itself affords sufficient ground for a presumption of fact that he was the thief; and in order to repel the presumption, makes it incumbent on him, on being called on for that purpose, to account for such possession consistently with his innocence. If he give a reasonable account of it, then it devolves on the

Commonwealth to prove such account is untrue. If he give an unreasonable account of it, then it devolves on the prisoner to sustain such account by other evidence.

"Exclusive possession does not necessarily mean possession of one person only, but may include joint possession of two or more persons.

"You are further instructed that the circumstances under which the prisoner is found in possession of such property; the time and place, the conduct of the accused and his account of his possession are all matters for the consideration of the jury."

C-3. "The Court instructs the jury that the accused is presumed to be innocent and that this presumption goes with him through all stages of the trial until the Commonwealth, upon whom the burden of proof rests, has shown beyond a reasonable doubt that the defendant is guilty.

"A doubt engendered by sympathy or by a dislike to accept the responsibility of convicting the defendant is not a reasonable doubt. The law does not require proof amounting to an absolute certainty, nor proof beyond possibility of mistake.

"If, after having carefully and impartially heard and weighed all the evidence, you reach the conclusion that the defendant is guilty with such degree of certainty that you would act upon the faith of it in your own most important and critical affairs, then the evidence is sufficient to warrant a verdict of guilty."

Instruction C-2 is identical in every material respect with the rule laid down in *Price* v. *Commonwealth*, 21 Gratt. (62 Va.) 846, on page 849. In that case the indictment contained three counts charging the accused with receiving property knowing it to be stolen.

Similar instructions were approved in *Porterfield's Case*, 91 Va. 801, 805, 22 S. E. 352; *Stallard* v. *Commonwealth*, 130 Va. 769, 775, 107 S. E. 722; *Stapleton* v. *Commonwealth*, 140 Va. 475, 124 S. E. 237; *Gilland* v. *Commonwealth*, 184 Va. 223, 233, 35 S. E. (2d) 130.

In *Porterfield's Case, supra,* the defendant was indicted for feloniously entering a bar-room with intent to commit larceny and with the commission of larceny.

In *Stallard's Case, supra,* the defendant was charged with breaking and entering in the night-time with intent to commit larceny, and with the commission of larceny.

In the *Stapleton Case, supra,* three defendants were jointly indicted for burglary and grand larceny. The evidence showed that Stapleton was not the actual thief; but that he later received the stolen goods from the other two defendants.

In *Gilland's Case, supra,* the defendant was charged with receiving stolen goods, knowing that they were stolen.

In the last three cases this court approved the rule of evidence stated in 2 Bish. New Cr. Prac. (2d ed.), section 959, where it was said: " '*When goods are shown to have been stolen*, recent possession of them is evidence against the possessor, tending to show either the original theft to have been committed by him, or a guilty receiving by him, according to the other circumstances of the case.' " (Italics added). *Gilland* v. *Commonwealth, supra,* page 234.

The facts in this case distinguish it from the above cited cases. Here the defendants were indicted for simple larceny. Virginia Code, 1942 (Michie), section 4440, now Code of Virginia, 1950, section 18-164. They were not charged with housebreaking, burglary, or receiving goods knowing that they were stolen, where evidence of the exclusive possession by a person of goods recently stolen is a circumstance to be considered in determining whether the possessor is guilty of the housebreaking, burglary, or receiving goods knowing the same to have been stolen, as the case may be. Here there was no question of possession or of the identity of the takers of the property. There was no presumption of fact that the goods were stolen, or that the owner of the property did not give its permission to its taking. The issue was whether or not the defendants took and carried away the property of the Welding Shipyard,

Inc., against its will and without its consent, and with a felonious intent to deprive the owner of its ownership there-in.

In contrast with instruction C-2, the court, in instruction D-1, properly told the jury:

D-1. "The Court instructs the jury that the accused are presumed to be innocent of the charge against them in the indictment, which presumption of innocence continues throughout the whole case and applies at every stage there-of, and is not overcome unless and until the Commonwealth has proven them guilty as charged in the indictment by evidence beyond a reasonable doubt; therefore, if after hearing all the evidence the jury have any reasonable doubt as to the guilt of the accused, it is your duty to acquit them."

Instruction C-2 is a statement of a rule of law applicable in a proper case. The presumption arising out of possession is based on proof of the fact that the property was stolen. In a prosecution for simple larceny the mere possession of the property involved does not create a presumption of theft. The accused is presumed to be innocent until his guilt has been proven as required by law. The instruction had no place in this case, where a material question was whether or not the owner of the property gave permission to the defendants to take it into their possession.

The court erred in granting instruction C-2. For that error its judgment must be reversed.

■■■ The defendants objected to instruction C-3 on the ground that there was no evidence tending to induce sympathy for the defendants. It will be recalled, however, that Barnes testified that he had "an aged mother for whom he is the sole support," and Thornton said that he had "a wife and three small children." This testimony was calculated to arouse sympathy. While it ought not to be necessary to tell a jury that they should not be swayed by passion, prejudice, or sympathy, sometimes the exigencies of a trial may render such an instruction necessary. Here the evidence of the defendants justified the instruction, the language of

which has been approved in *Nelson* v. *Commonwealth*, 153 Va. 909, 922, 150 S. E. 407.

Instruction D-2 was given in the following language:

D-2. "The Court instructs the jury that if you believe from the evidence that the Welding Engineers maintained a dump at or near their premises and that they suffered or permitted the accused and others to reclaim metal and other scrap materials therefrom; and if you further believe from the evidence that the accused found the cable in question upon the said dump and removed it as they had been permitted to do on other occasions, *under an honest belief that it was abandoned material*, then you must find them not guilty." . (Italics added).

As tendered by the defendants, the instruction did not contain the italicized clause which was added by the court.

■ The defendants insist that "an honest belief" that the property taken by them was abandoned material was immaterial, if consent of the owner had been given them to remove it. The answer to this is that their defense was based on their asserted belief that the agents of the Shipyard had given them permission to reclaim scrap materials from the dump. The consent alleged applied to abandoned material, not to new and valuable machinery, material, or a new automobile, placed on the dump by mistake, or for a special purpose. Consequently, if the defendants took and removed other than abandoned property, their belief, honest or dishonest, was an element which reflected the intent with which the property was taken.

The instruction, as amended, permitted a finding by the jury that the defendants were not guilty, if the jury believed that the defendants entertained an honest belief, that is, a *bona fide* and not imaginary belief, that they were taking abandoned property with the assent of its owner. Whether or not the defendants believed that the cable was abandoned property was a material question in the case. They had no right to remove any property not abandoned. If it was not actually scrap or abandoned material, the defendants could

not justify their innocence unless they had an honest belief that it had been abandoned. The instruction, considered as a whole, was neither misleading nor prejudicial to the defendants.

For the reasons stated, we are of opinion to reverse the judgment of the trial court, set aside the verdict of the jury, and remand the case for a new trial.

*Reversed and remanded.*

BUCHANAN, J., dissenting.

In holding that Instruction C-2 had no place in this case the court has, in my opinion, limited and weakened a long-standing rule of evidence that has been found useful and fair in larceny cases. I do not believe it is wise to do that and, therefore, cannot agree with the holding.

The rule stated in the instruction was first announced more than 75 years ago in *Price* v. *Commonweath*, 21 Gratt. (62 Va.) 846. Judge Moncure, then President of this court, after reviewing the English cases and the recognized authorities on evidence, there formulated it thus:

"If property be stolen, and recently thereafter be found in the exclusive possession of the prisoner, then such possession of itself affords sufficient grounds for a presumption of fact that he was the thief; and, in order to repel the presumption, makes it incumbent on him, on being called on for the purpose, to account for such possession consistently with his innocence. If he give a reasonable account of it, then it devolves on the Commonwealth to prove that such account is untrue. If he give an unreasonable account of it, then it devolves on the prisoner to sustain such account by other evidence." 21 Gratt. (62 Va.), at p. 869.

It will be seen that the first paragraph of Instruction C-2 is identical with the quoted language. An instruction in the same language was approved in *Stapleton* v. *Commonwealth*, 140 Va. 475, 482, 125 S. E. 237, 239, and again in *Gilland* v. *Commonwealth*, 184 Va. 223, 233, 35 S. E. (2d) 130, 134,

both sustaining convictions of grand larceny; and one to similar effect in *Stallard* v. *Commonwealth*, 130 Va. 769, 775, 107 S. E. 722, 724, sustaining a conviction of petit larceny.

It is interesting to note that in the *Price Case* the defense was similar to the defense here, *i. e.*, the defendant "claimed title to the horse, and said he had a bill of sale for it."

It is not questioned, of course, that for the rule to apply the Commonwealth must first prove that the goods have been stolen. Instruction C-2 is predicated on proof of that fact and in its first sentence states that "if property be stolen," the recent possession thereof by the prisoner results in a rebuttable presumption of fact. Instruction C-2 told the jury what was required to prove larceny and D-1 told them of the presumption of innocence and the burden of proof.

The Commonwealth's evidence was that the cable had been stolen and its sufficiency is not questioned. It was to the effect that the cable was taken without permission, not from the dump pile, but from the rack on which it had been stored in the cable storage area, some 75 feet from the edge of the dump, and that the four coils had been tagged that same afternoon as late as three-thirty to four-thirty o'clock.

The application of the rule has not been made to depend on the nature of the defense. It applies in all larceny cases upon proof that goods have been stolen and found in the recent exclusive possession of the defendant or defendants. The rule then shifts the burden to the defendant to explain how he acquired possession. If his explanation is reasonable, that is, one that the jury can believe, the burden goes back to the Commonwealth to prove it is not true; if unreasonable, that is, one that the jury would not accept, supporting evidence is required to overcome the *prima facie* case.

The Commonwealth having shown that the cable had been stolen and found very soon in the possession of these defend-

ants, the rule then relieved the Commonwealth of the burden of showing how they acquired possession. That burden shifted to the defendants. They thereupon offered evidence that they took it with the implied permission of the owner. The jury did not believe this explanation and their conviction followed.

I can see no reason for refusing to apply the rule to the facts of this case: It is an ordinary charge of larceny and a not unusual type of defense. The defense was that the defendants did not steal the goods which were found in their possession and which, according to the Commonwealth's evidence, had been stolen. Instruction C-2 simply told the jury, as juries have long been told, on authority of the *Price Case* and the many following it, that in such circumstances they must give a reasonable explanation of their possession or be convicted.

Defendants' counsel does not contend in his brief that the instruction was inapplicable. His argument is that the "vice of this instruction" is that while the presumption arising from possession is termed a presumption of fact, the language of the instruction converts it into a presumption of law.

HUDGINS, C. J., concurs in this dissent.