STATE OF WEST VIRGINIA

*v.*

ISAAC BYERS

(No. 13591)

Decided May 18, 1976.

*W. H. Ballard, II, Ballard & Brumfield*, for Isaac Byers.

*Chauncey H. Browning*, Attorney General, *E. Leslie Hoffman, III*, Assistant Attorney General, *Richard E. Hardison*, Deputy Attorney General, for the State.

FLOWERS, JUSTICE:

An automobile driven by the defendant, Isaac Byers, struck another vehicle on State Route 102 in McDowell County. When the defendant was in the hospital emergency room for treatment of injuries sustained in the accident, a state trooper directed a physician to extract a blood sample from the defendant for chemical analysis of its alcohol content. Fourteen days after the accident, a warrant for the defendant was issued, charging him with driving a motor vehicle upon a public highway under the influence of intoxicating liquor. Subsequently, the defendant was indicted for the offense and convicted by a jury in the Intermediate Court of McDowell County. The trial judge sentenced the defendant to six months in the county jail, fined him $50 and suspended his driver's license for six months. The judgment was affirmed on appeal to the Circuit Court of McDowell County.

The critical issue here is whether the results of the blood test were inadmissible at trial because the test was not administered incident to a lawful arrest as required by *W. Va. Code*, 17C-5A-1, *as amended*. Additionally, the defendant assigns as error: (1) the giving or refusal to give certain instructions to the jury; (2) the prejudicial remarks of the prosecuting attorney during his closing argument; and (3) the failure of the trial court to direct a verdict at the close of the State's evidence or at the conclusion of all the evidence.

The accident occurred on April 14, 1973, between Welch and Gary in McDowell County. The defendant was

proceeding north on State Route 102 toward Welch when he collided with a southbound car driven by William Sanders. The point of impact occurred in the southbound lane according to Sanders' testimony, a fact corroborated by a State Trooper and another witness.

Otis Snow, who witnessed the accident from a window in his home, was the first person to arrive at the scene. He found the defendant unconscious and slumped over the wheel of the car. Troopers Meadows and Pope arrived at the scene approximately twenty-five minutes after the accident. Meadows described the defendant as "groggy," "sleepy," but conscious with his eyes open and sitting upright in the vehicle. The defendant made no response to his questions. Trooper Pope described the defendant's condition at the scene as "semi-conscious. Sort of in shock." He stated that Byers was "slumped down in the seat" and that when he leaned into the vehicle, he detected a strong odor of an alcoholic beverage.

Meadows volunteered that the defendant "appeared to be intoxicated." He testified that he smelled the odor of an alcoholic beverage about the defendant at the scene and at the hospital. The two ambulance attendants who took the defendant to the hospital testified they smelled alcohol about the defendant.

On cross-examination Meadows admitted that he had testified at the preliminary hearing that there was liquid on the floor of the car from which the odor of alcohol emanated. The trooper did not have the liquid nor the paper cups found in the vehicle analyzed for alcohol. He admitted that the odor in the car might have resulted from antifreeze leaking from the air-conditioner. He examined the vehicle and found no whiskey bottles or beer cans.

The two troopers saw the defendant in the emergency room sometime after 11:00 p.m., at least 45 minutes after the accident. Both troopers testified that the defendant was told he was being "charged" with driving under

the influence of alcohol and that he was advised of the provisions of the implied consent law regarding suspension of license upon refusal to consent to a blood test.

It was admitted that no citation was issued the defendant on the night of the accident. An arrest warrant was not issued until April 28, 1973, fourteen days after the accident. Trooper Meadows testified that he waited to obtain the warrant in order to "get all my evidence together because I knew there would be a preliminary hearing." He further stated that he might have told the defendant he was under arrest when Byers came to see him after his discharge from the hospital. Meadows testified that he was "suspicious" about the defendant's intoxication but that his delay in obtaining a warrant was "not exactly" and "not" because he was awaiting the results of the blood test.

Trooper Pope stated, however, that there were "reasons to believe" and "we believed" that the defendant was intoxicated. He testified that the blood test was performed "to confirm our belief" that the defendant was intoxicated.

The two troopers and the nurse on duty in the emergency room testified concerning the procedures employed in extracting the blood sample. Trooper S. W. Kanek, a chemist for the Department of Public Safety, was permitted to testify over objection that the blood alcohol content was .24%.

The defendant's case was predicated upon the theory that any alcohol in his blood was attributable to a prescription cough syrup which he took routinely. The defendant testified that he and his grandson had trimmed tree limbs the morning of the accident and that he had become ill. According to the testimony of Byers, his wife, his daughter and his grandson, he had spent the rest of the day on the couch. Byers and his family denied that he had consumed any intoxicating beverages that day. The medicine which Byers took routinely for a chest condition was by volume 22% alcohol.

Byers testified that he had taken three doses of the medicine during the day, and that the medicine when mixed with saliva smelled "just like whiskey." He related that he had taken his grandson to Gary and then to a friend's house. Byers and his grandson were accompanied by Johnny Pearce. Pearce, who was in the vehicle at the time of the accident, testified that the defendant was not intoxicated and that neither of them had drunk anything from the time they left Welch.

Mrs. Byers, and the defendant's grandson were present in the emergency room when the police talked with the defendant. They corroborated the defendant's statement that he was not told of any charge of driving under the influence of alcohol, but was merely informed that if he refused to consent to the test, his license would be suspended. Both Byers and his grandson stated that Meadows testified at the preliminary hearing that he had told the defendant he would arrest him if the results of the test were positive.

After the warrant was issued, a preliminary hearing was held before the justice of the peace and the defendant was subsequently indicted and tried for the offense in the Intermediate Court of McDowell County.

Prior to the trial, counsel for the defendant moved to suppress the results of the blood test on the theory that it had not been administered incident to a lawful arrest. The court overruled the motion on the ground that Section 5 of the implied consent law[1] was clear and provided that if the test was completed within two hours after the alleged acts the results were admissible.

I

The principal issue here is whether the results of the chemical analysis of the blood for alcohol content were improperly admitted. Admission of the test results depends upon whether the blood test was administered "incidental to a lawful arrest."

[1] *W. Va. Code*, 17C-5A, *as amended.*

*W. Va. Code,* 17C-5A-1, *as amended,* provides:

"Any person who drives a motor vehicle upon the public streets or highways of this State shall be deemed to have given his consent by the operation thereof, ... to a chemical test of either his blood, breath or urine for the purpose of determining the alcoholic content of his blood whenever he shall be lawfully arrested by a law-enforcement officer as hereinafter defined for the offense of driving a motor vehicle upon the public streets or highways of this State while under the influence of intoxicating liquor. The test shall be incidental to a lawful arrest and shall be administered at the direction of the arresting law-enforcement officer having reasonable grounds to believe the person to have been driving a motor vehicle upon the public streets or highways while under the influence of intoxicating liquor."

In *State v. Hood,* 155 W. Va. 337, 184 S.E.2d 334 (1971), the Court held that in order for implied consent to apply, the test must be administered: (1) incident to a lawful arrest; (2) by a law-enforcement officer as defined by the statute; and (3) at the direction of the arresting law-enforcement officer having reasonable grounds to believe the offense was committed.

State Troopers are law-enforcement officers as defined by the statute and there is no question that they had probable cause to believe the defendant was intoxicated when they directed the test to be administered. It is the first requirement of the *Hood* case with which we must deal. For the hospital blood test to be admissible, a lawful warrantless arrest must have been effected by the officer either at the scene of the accident or at the hospital.

Ordinarily a warrantless arrest may be made by an officer only when he has reasonable grounds to believe that a felony has been committed.[2] A warrantless arrest

[2]*State v. Johnson,* W. Va., 201 S.E.2d 309 (1973); *State v. Duvernoy,* W. Va., 195 S.E.2d 631 (1973); *State v. Plantz,* 155 W. Va. 24, 180 S.E.2d 614 (1971).

for a misdemeanor cannot be effected unless the offense is committed in the presence of the officer.[3]

Driving under the influence of intoxicating liquor is a felony only when the offense is committed a third or subsequent time within a five-year period. In all other instances the offense is a misdemeanor.[4] Despite the usual or possible misdemeanor character of the offense, however, this particular offense does not have to be committed "in the presence" of the officer in order to justify a warrantless arrest. *W. Va. Code*, 17C-5A-1, *as amended*, specifically provides that a lawful arrest may be effected and a test for alcohol may be administered incident thereto at the direction of the "arresting law-enforcement officer having reasonable grounds to believe the person to have been driving a motor vehicle ... while under the influence of intoxicating liquor."

In the instant case, therefore, the officers, "having reasonable grounds to believe" that the defendant committed the offense, could have made a lawful warrantless arrest either at the scene of the accident or at the hospital. There is no evidence that an arrest was made at the scene of the accident but the officers testified that such an arrest was made at the hospital.

On the latter issue there is conflicting testimony. The officers maintain the defendant was advised that he was being "charged" with driving under the influence of alcohol. The defendant and his wife and grandson deny that such a statement was made. The defendant and his grandson testified that Trooper Meadows had previously given testimony that his intention was to arrest the defendant if the results of the test were positive.

---

[3]*State v. Lutz*, 85 W. Va. 330, 101 S.E. 434 (1919). We note that the term "in the presence" has been defined in *Noce v. Ritchie*, 109 W. Va. 391, 155 S.E. 127 (1930); *State v. Koil*, 103 W. Va. 19, 136 S.E. 510 (1927); and *State v. Lutz, supra*. We do not resort to the holdings of those cases for a resolution of the issues here.

[4]*W. Va. Code*, 17C-5A-1, *as amended*.

An arrest is the taking, seizing or detaining of the person of another (1) by touching or putting hands on him; (2) by any act or speech that indicates an intention to take him into custody and that subjects him to the actual control and will of the person making the arrest; or (3) by the consent of the person to be arrested. 5 Am. Jur. 2d *Arrest* §1, pp. 695–96; I Torcia, Wharton's Criminal Procedure, §53, p. 149 (12th ed. 1974); I Varon, Searches and Seizures, 75 (2nd ed. 1974).

Statutory procedures for effecting a warrantless arrest for a traffic violation, however, are contained in W. Va. Code, 17C-19, *as amended*. Section 5 thereof provides that: "The *following* provisions of this article shall govern all police officers in making arrests without a warrant for violations of this chapter, . . ." (emphasis added). This section must be construed to refer to "foregoing" sections of the Article[5] which in the relevant portions of Section 3 provides:

"Whenever any person is arrested for any violation of this chapter punishable as a misdemeanor, the arrested person shall be immediately taken before a justice of the peace or court within the county in which the offense charged is alleged to have been committed and who has jurisdiction of such offense and is nearest or most

---

[5]*W. Va. Code*, 17C-19-5, *as amended*, was taken from the Uniform Vehicle Code which was sponsored by the National Committee on Uniform Traffic Laws. The source section used the word "foregoing" where the word "following" appears in our statute. The published volumes of the Acts of the Legislature, Regular Session, 1951, as well as the copy of the bill approved by the Governor on file in the Secretary of State's office, use the word "following." Given the ordinary and acceptable meaning of "following," Section 5 is ambiguous since it refers to the manner in which an arrest may be made and the *following* sections deal with record keeping. It is the *foregoing* sections which deal with arrest procedures. The intrinsic evidence contained within Article 19 reveals that a clerical error exists which must be corrected by substituting "foregoing" for "following." 51 Ops. of the Atty. Gen. 489 (1965).

accessible with reference to the place where said arrest is made, in any of the following cases:[6]

. . .

(3) When the person is arrested upon a charge of driving while under the influence of intoxicating liquor or narcotic drugs; . . . ."

Whenever the person arrested is not immediately taken before a justice of the peace as mandated by Section 3, Section 4 requires the arresting officer to issue a citation requiring the offender to appear before a justice or court having jurisdiction of the offense.

The most obvious intent of the two statutes is to provide alternate arrest procedures depending upon the na-

---

[6]The words "immediately," "forthwith," and similar phrases, such as "without unnecessary delay" have been given broad interpretations. A Texas court, in construing a statute similar to *W. Va. Code*, 17C-19-3, *as amended*, held:

"... The word 'immediately' is a term of relative signification. Sometimes it is understood to mean instantaneously or without intervention of time, but, as used in most statutes, it is not to be construed so strictly. The law must be given a practical and reasonable application. Accordingly, the word 'immediately' is very generally held to mean with due diligence. The accused has the right to be presented without delay, but the question of what is delay must be determined by all the facts and circumstances. Necessarily some time must elapse between the arrest and the presentment before the magistrate * * *. While courts must safeguard the rights of individuals, they should not impose liability upon peace officers for delays which are reasonable under all the circumstances. The statute does not make it the duty of the officer to take the accused to the office of the justice of the peace when he knows or has good grounds for the belief that the justice is not in his office. It would have served no purpose whatever for the petitioner to have taken respondent to the courthouse before delivering him at the jail." *Hicks v. Matthews*, 153 Tex. 177, 266 S.W.2d 846, 849 (1954).

In a similar decision this Court held that the failure of police officers to take the defendant before a justice until the morning after arrest was not violative of *W. Va. Code*, 62-1-5, *as amended*, when the justice's office was closed at the time of arrest and detention. *State v. Plantz, supra* note 2.

ture or character of the offense charged. Apparently, however, in recognition of those occasions when the person is alleged to have committed one or more of the serious offenses referred to in *W. Va. Code*, 17C-19-3, *as amended*, and for such good cause as a justice not being readily available or injuries to the person which require immediate medical attention or hospitalization, the person cannot be taken before a justice or court having jurisdiction, *W. Va. Code*, 17C-19-4, *as amended*, provides an alternate procedure. It states:

"(a) Whenever a person is arrested for any violation of this chapter punishable as a misdemeanor, and such person is not immediately taken before a justice or court as hereinbefore required, the arresting officer shall prepare written notice to appear in court ...."

The import of Sections 3 and 4 of Article 19, is to require that some actual or constructive restraint of the offender be effected in order to make a warrantless arrest for a traffic violation. In the case of a charge of driving under the influence of intoxicating liquor, a warrantless arrest is lawful only when an officer with reasonable grounds to believe the offense to have been committed effects an actual restraint by taking the offender immediately before a justice or court having jurisdiction of the offense or else effects a constructive restraint by the issuance of a citation when for good cause he cannot comply with the provisions of *W. Va. Code*, 17C-19-3, *as amended*.

We conclude, therefore, that in the circumstances of this case no lawful warrantless arrest was made at the hospital since no actual or constructive restraint was ever effected by the arresting officers.

The subsequent issuance of a warrant and the arrest of the defendant some fourteen days after the offense was committed does not cure the omission. *W. Va. Code*, 17C-5A-1, *as amended*, requires that a lawful arrest be made and that the chemical test be performed incident to the arrest. The lapse of time between the test and the arrest is vital in determining whether the test is performed incident to arrest. A lapse of fourteen days can-

not be justified as "incident" to arrest under any theory.[7] Consequently, the results of the blood test and the evidence surrounding the taking of the blood sample were inadmissible. In light of this ruling, the trial court improperly instructed the jury on the weight to be given to the results of the blood test and the manner in which a lawful warrantless arrest could be effected.

## II

The second issue involves State's Instruction No. C which was given over the objection of the defendant. It provided:

> "The Court instructs the jury that the accused is presumed to be innocent and that such presumption goes with him through all stages of the trial until the State, upon which the burden of proof rests, has shown beyond a reasonable doubt that the defendant is guilty. A doubt engendered by sympathy or by a dislike to accept the responsibility of convicting the defendant is not a reasonable doubt. The *law does not require proof* amounting to absolute certainty, nor proof *beyond all possibility of mistake*. If, after having carefully and impartially heard and weighed all the evidence, you reach the conclusion that the *defendant is guilty with such degree of certainty that you would act upon the faith of it in your own most important and critical affairs*, then the evidence is sufficient to warrant a verdict of guilty." (emphasis added)

The defendant contends that the language of this "reasonable doubt" instruction, which states that: "[t]he law does not require ... proof beyond all possibility of mistake," is misleading and prejudicial and implies that the law recognizes that the jury may make a mistake. Counsel also objects to the phrase "if after having carefully and impartially heard and weighed all the evidence, you reach the conclusion that the defendant is

---

[7]*State v. Kroenig,* 274 Wis. 266, 79 N.W.2d 810 (1956), *aff'd on rehearing,* 274 Wis. 276, 80 N.W.2d 816 (1957).

guilty with such degree of certainty that you would act upon the faith of it in your own most important and critical affairs, then the evidence is sufficient to warrant a verdict of guilty."

This specific instruction was approved in *Nelson v. Commonwealth*, 153 Va. 909, 150 S.E. 407 (1929). The precise language objected to by counsel was included in an instruction approved in *Barnes v. Commonwealth*, 190 Va. 732, 58 S.E.2d 12 (1950); and the language "beyond all possibility of mistake" was approved in *Bryant v. Commonwealth*, 189 Va. 310, 53 S.E.2d 54 (1949).

We cannot, however, agree entirely with the rulings on this instruction rendered by the Virginia court. Our disagreement with the Virginia decisions is limited to the last sentence of the instruction. The italicized portion of the instruction permits imposition of a personal standard by each juror rather than defining a common standard to be accepted by each juror. Giving the instruction, therefore, constituted reversible error. We have reviewed the other errors relating to instructions and find them to be without merit.

### III

The defendant urges that a mistrial should have been declared because of the prejudicial remarks of the prosecuting attorney. These remarks are not made a part of the record and the record does not disclose that any objection was made to the prosecutor's closing argument. Since the error is neither preserved nor apparent from the record, it is not reviewable by this Court on appeal.

### IV

Finally the defendant urges that the trial court should have directed a verdict for the defendant at the close of the State's evidence or at the conclusion of all the evidence. This assignment of error is predicated upon the theory that since the results of the blood test were inadmissible, there was not sufficient evidence to uphold a

conviction. We are not disposed to so hold. The evidence reflecting symptoms of intoxication and consumption of an alcoholic beverage was sufficient to justify submission of the case to the jury.

For the reasons stated in this opinion, the judgment of the Circuit Court of McDowell County is reversed, and the case is remanded for a new trial.

*Reversed and remanded.*

BERRY, CHIEF JUSTICE, *concurring:*

I concur in the decision of this case, but do not agree that the giving of Instruction No. C offered by the State and given by the trial court over the objection of the defendant, constituted reversible error. The first sentence of this instruction clearly states the law with regard to the burden of proof. The last two sentences merely attempt to help the jury in arriving at a verdict after considering the evidence. There is no such thing as absolute certainty of proof. It has always been held that circumstantial evidence will support a conviction and the language in the latter part of the instruction merely tells the jury what degree of proof is necessary to support convictions. None of the language in this instruction is in conflict with the correct statement in the instruction that the State has the burden of proving beyond a reasonable doubt that the defendant is guilty.

I would agree with the Virgina Supreme Court wherein it approved of similar language in an instruction and held that such an instruction would not constitute reversible error. *Nelson v. Commonwealth,* 153 Va. 909, 150 S.E. 407 (1929); *Barnes v. Commonwealth,* 190 Va. 732, 58 S.E.2d 12 (1950); *Bryant v. Commonwealth,* 189 Va. 310, 53 S.E.2d 54 (1949).