COURT OF APPEALS OF VIRGINIA

Present:  Judges Beales, Decker and Senior Judge Clements
Argued by teleconference

UNPUBLISHED

ABDUL KARIM JALLOH

                                                      MEMORANDUM OPINION[*] BY
v.       Record No. 0247-13-4                         JUDGE RANDOLPH A. BEALES
                                                      MAY 6, 2014

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Burke F. McCahill, Judge

    Charles Compton, Assistant Public Defender (Alexis M. Downing,
    Assistant Public Defender; Office of the Public Defender, on brief),
    for appellant.

    David M. Uberman, Assistant Attorney General (Mark R. Herring,
    Attorney General, on brief), for appellee.


A jury convicted Abdul Karim Jalloh (appellant) of embezzlement, in violation of Code

§ 18.2-111. Consistent with the jury's recommendation, the trial court imposed a $2,500 fine. In

his assignment of error before this Court, appellant argues that the trial court committed reversible

error when it refused one of appellant's proffered jury instructions addressing the abandonment of

property. For the following reasons, we affirm the embezzlement conviction.

I. BACKGROUND

Appellant began working for Lansing Building Products (Lansing) in 2005 as an associate

materials handler at Lansing's warehouse in Sterling, Virginia. Appellant was promoted to the

position of warehouse manager of the Sterling branch in 2008. A year or two later, appellant's role

was redefined from a managerial position to a supervisory position in order to relieve appellant of

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the responsibility of managing warehouse employees (while still utilizing appellant's experience with Lansing's computerized warehouse inventory system). At trial, appellant admitted that this change amounted to a demotion that had cost him about $10,000 in annual salary.

Appellant's responsibilities as the supervisor of the Sterling warehouse included maintaining Lansing's inventory management system and coordinating Lansing's fleet of delivery trucks to ensure that products were delivered to Lansing's customers accurately and efficiently. Lansing sells exterior building products, and vinyl siding is its best-selling product. Consequently, Lansing keeps large amounts of vinyl siding in its vast Sterling warehouse.

Over the course of approximately one month in May and June of 2011, appellant directed and profited from the sale of 288 cartons of vinyl siding to Bruce Tyler, the owner of Bargain Village, which is a building supply business near Fredericksburg where building materials are sold at a discount. It is undisputed that appellant instructed a Lansing driver to deliver the vinyl siding to Bargain Village, that Tyler gave the driver cash in exchange for the vinyl siding, that appellant received this cash from the driver, that appellant was paid about $10,000 in cash for the vinyl siding, that the retail value for the amount of vinyl siding that appellant sold to Tyler was approximately $60,000, and that appellant did not seek Lansing's permission to conduct these cash transactions with Tyler.

Previously, Lansing itself had sold vinyl siding to Bargain Village through transactions authorized by Tim Grantz, Lansing's branch manager at the Sterling location. These transactions involved vinyl siding that had been rendered obsolete because the manufacturer of that product had been acquired by a different corporation, which discontinued that line of vinyl siding. On that occasion, Tyler rented a tractor-trailer to pick up the obsolete vinyl siding from Lansing's warehouse in Sterling, and Tyler paid for the materials by check. The invoice pertaining to these transactions, which was admitted into evidence at trial (Commonwealth's Exhibit 4), reflects that

the items that Tyler purchased from Lansing directly were marked with the code "ZALCOB" – Lansing's internal code for an obsolete item. Conversely, after discovering appellant's cash transactions with Tyler, Paul Meade, Lansing's operations manager, printed a computer-generated invoice (Commonwealth's Exhibit 7) showing that the vinyl siding that appellant had sold to Tyler was not marked with the "ZALCOB" code for obsolete products that appears in Commonwealth's Exhibit 4.

Testifying for the defense, Mark Martin, who was Lansing's warehouse manager at the Sterling branch from January 2011 to May 2012, testified that Lansing conducted warehouse inventories and that certain materials would be "slated for removal" from the warehouse. These items included special order materials that were never picked up by customers, overstocked materials, and materials that were damaged or discontinued. According to Martin, materials that were not picked up by customers would be taken to a recycling facility every three to six months. Martin also testified that those materials "could be given to employees to use for their [own] house[s]" or for "side job[s]," although Martin explained that it was "more common" for Lansing to discard those items than to "give them away to employees." During his testimony, Martin viewed the items listed on Commonwealth's Exhibit 7. On direct examination, Martin testified that there was "some standard material, some special order, some that may have been overstock" and that some of the items "were slated for removal." On cross-examination, Martin qualified this response, explaining that "I said some could have been slated" for removal if those items were discontinued products, but that he could not know this for sure based on the information in Commonwealth's Exhibit 7.

Jeffery Marcey, who was a materials handling associate for Lansing in May 2011, also testified for the defense. Marcey testified that he was present and assisted in loading materials for two different transactions involving Bargain Village around that time. The first transaction involved

Hardiplank siding, which contains concrete. Marcey described these items of Hardiplank siding as "old" and explained that they had been removed from the Sterling warehouse. In addition, Marcey testified that "there was so much that we weren't able to just jam it all in the trash can." According to Marcey, the Hardiplank siding was already outside of the warehouse when Tyler and a driver arrived. Marcey did not observe any exchange of money during this transaction.[1] Marcey testified that the "ticket" pertaining to the second transaction called for him to load vinyl siding on a "box truck" for delivery to Bargain Village. When the prosecutor asked Marcey on cross-examination whether appellant was in charge of "taking that paperwork and processing it," Marcey responded, "Correct."

Appellant testified that, by virtue of his position supervising the Sterling warehouse, Lansing had authorized him to declare that certain special order, overstock, or discontinued items in the warehouse were or should be discarded by Lansing. Appellant testified that the 288 cartons of vinyl siding that he sold to Tyler "were determined to be discarded by myself" and that he "[had] the authority to do so." Appellant also claimed that selling the vinyl siding for his own personal profit was not a crime because "Lansing does not have control of what [an] employee does with the material after, you know, it's been discarded." In light of appellant's testimony, the parties and the trial court agreed that it was appropriate to instruct the jury on the principle of a "*bona fide* claim of right" – a defense to the charge of embezzlement. See Whitlow v. Commonwealth, 184 Va. 910, 918, 37 S.E.2d 18, 22 (1946) ("There can be no embezzlement where the property is taken under an honest belief that [the accused] had a *bona fide* claim of right to do so." (citation omitted) (internal quotation marks omitted)).

---

[1] Appellant testified that he decided to sell vinyl siding to Tyler after two other Lansing employees told him that they had sold the Hardiplank siding to Tyler.

In addition, appellant requested that the trial court instruct the jury on the principle of abandonment of property. Appellant's counsel contended that the jury could conclude from the evidence that Lansing had abandoned the 288 cartons of vinyl siding that appellant sold to Tyler. The trial court disagreed with this contention, finding, "I think this is inserting a new concept in that really has not been the subject of this particular case." The trial court explained, "[T]he whole concept is he's saying as an authorized employee, he made the decision to put it in a category that was subject to his disposal." The trial court then concluded:

> The issue really is a claim of right. That's what this case is all about. I mean, otherwise your client would be saying, I want to be able to say that my decision as a manager or supervisor or whatever his actual title was that day, what his actual role that day, I can make the determination for the company and that binds the company.
>
> And that's what he's saying. That's really what he's saying. But your – all of these instructions talk about, In deciding whether the property was abandoned, you may consider statements, actions or the conduct of Lansing Building Products. No, it's the actions of your client. He's the one who made the decision to say, It's not on the inventory, therefore I get to dispose of it.

The trial court denied all four of appellant's proposed jury instructions relating to the abandonment of property, finding that appellant's decision to dispose of the vinyl siding "gets back into the instruction that's already given about the good faith of the claim of right to take it."

The jury convicted appellant of embezzlement, and appellant timely appealed to this Court. On appeal, appellant has challenged *only* the refusal of *one* of his abandonment instructions in his brief before this Court. During oral argument before this Court, appellant's counsel acknowledged that appellant's brief on appeal raised only the refusal of one abandonment instruction – rather than all four.[2]

---

[2] Because appellant did not raise in his brief to this Court any argument addressing the three other proposed abandonment instructions, appellant has waived consideration of those proposed instructions on appeal. See Rule 5A:20(e) (requiring the opening brief of appellant to

II. ANALYSIS

Appellant assigns error to the trial court's refusal to give the following proposed jury instruction describing the concept of "abandonment" – as that term would relate to appellant's claim that Lansing abandoned the vinyl siding that appellant sold to Bargain Village:

> As used in these instructions the word "abandonment" means a specific intent to relinquish or give up a right to something. In deciding whether the property at issue was abandoned, you may consider the statements, actions and/or conduct of Lansing Building Products. Intent to abandon may be inferred from the acts and conduct of the parties involved and from the nature and situation of the property. Affirmation by Lansing Building Products of intent to abandon is not required.

See 1 Am. Jur. 2d, Abandoned, Lost, and Unclaimed Property § 58 ("Proof of intention to abandon"). Assuming without deciding that appellant's proposed instruction would have provided the jury with a full and correct definition of the abandonment of property,[3] the trial court was not required to accept this proposed instruction. The instruction was not supported by more than a scintilla of evidence in this case.

> As a general rule, the matter of granting and denying instructions does rest in the sound discretion of the trial court. See Daniels v. Commonwealth, 275 Va. 460, 466, 657 S.E.2d 84, 87 (2008); Stockton v. Commonwealth, 227 Va. 124, 145, 314 S.E.2d 371, 384 (1984). "Our 'sole responsibility in reviewing [jury instructions] is to see that the law has been clearly stated and that the instructions

contain "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error"); see also Farmer v. Commonwealth, 62 Va. App. 285, 295, 746 S.E.2d 504, 509 (2013); Epps v. Commonwealth, 59 Va. App. 71, 77 n.6, 717 S.E.2d 151, 154 n.6 (2011); Atkins v. Commonwealth, 57 Va. App. 2, 20, 698 S.E.2d 249, 258 (2010). During oral argument before this Court, appellant's counsel requested consideration of these other proposed jury instructions under the "ends of justice exception." However, the "ends of justice" exception to Rule 5A:18 is used sparingly to excuse the failure to preserve for appeal an issue in the trial court – but never to excuse the failure to brief an issue under Rule 5A:20.

[3] We observe in this case, however, that the evidence is undisputed that the 288 cartons of vinyl siding that appellant sold to Tyler were taken from Lansing's own warehouse in Sterling. See 1 Am. Jur. 2d, supra, § 3 ("Definition and scope; abandoned property; abandonment") (explaining that abandonment "involves a relinquishment of possession" of property).

- 6 -

cover all issues which the evidence fairly raises.'" Molina v. Commonwealth, 272 Va. 666, 671, 636 S.E.2d 470, 473 (2006) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). And in deciding whether a particular instruction is appropriate, we view the facts in the light most favorable to the proponent of the instruction. See Commonwealth v. Cary, 271 Va. 87, 91, 623 S.E.2d 906, 907 (2006).

Cooper v. Commonwealth, 277 Va. 377, 381, 673 S.E.2d 185, 187 (2009). As the Supreme Court has explained, "[A]n instruction is proper only if supported by more than a scintilla of evidence." Commonwealth v. Sands, 262 Va. 724, 729, 553 S.E.2d 733, 736 (2001).

In this case, appellant was charged with embezzlement under Code § 18.2-111.[4] "To establish the crime of embezzlement under Code § 18.2-111, the Commonwealth must prove that the accused wrongfully appropriated to his or her own use or benefit, with the intent to deprive the owner thereof, the property entrusted or delivered to the accused." Zoretic v. Commonwealth, 13 Va. App. 241, 243, 409 S.E.2d 832, 833-34 (1991). The trial court properly instructed the jury on the essential elements of the offense of embezzlement. At trial, appellant raised a *bona fide* claim of right defense against the charge of embezzlement – contending that he was authorized to determine, on Lansing's behalf, when materials should be discarded from Lansing's warehouse at the Sterling

---

[4] Code § 18.2-111 states:

> If any person wrongfully and fraudulently use, dispose of, conceal or embezzle any money, bill, note, check, order, draft, bond, receipt, bill of lading or any other personal property, tangible or intangible, which he shall have received for another or for his employer, principal or bailor, or by virtue of his office, trust, or employment, or which shall have been entrusted or delivered to him by another or by any court, corporation or company, he shall be guilty of embezzlement. Proof of embezzlement shall be sufficient to sustain the charge of larceny. Any person convicted hereunder shall be deemed guilty of larceny and may be indicted as for larceny and upon conviction shall be punished as provided in § 18.2-95 or § 18.2-96.

location.  The trial court properly instructed the jury on the defense of *bona fide* claim of right, as discussed *supra*.  See Whitlow, 184 Va. at 918, 37 S.E.2d at 22.

In support of his argument that the trial court was also required to give his proposed instruction addressing abandonment, appellant relies on two Virginia cases.  Appellant cites the first decision, Keen v. Commonwealth, 24 Va. App. 795, 485 S.E.2d 659 (1997), simply for the general principle that jury instructions are given "to inform the jury of the law guiding their deliberations and verdict."  Id. at 807, 485 S.E.2d at 665.  The other case appellant cites, Barnes v. Commonwealth, 190 Va. 732, 58 S.E.2d 12 (1950), does involve the abandonment of property.  However, Barnes does not support appellant's claim that the trial court committed reversible error here.  The Supreme Court in Barnes held that an abandonment instruction was proper at the defendants' larceny trial where there was evidence that, among other circumstances, the defendants took the allegedly stolen items *from a shipyard dump*.[5]  Id. at 740, 58 S.E.2d at 16.  By contrast, in this case, appellant profited from the sale of vinyl siding that was still being held inside Lansing's warehouse.  This is a significant factual difference that renders Barnes inapplicable.

Furthermore, viewing the evidence in the light most favorable to appellant since he was the proponent of the refused jury instruction, the actual text of appellant's proposed jury instruction simply does not reflect the evidence in this case.  Appellant's proposed instruction focuses

---

[5] The full text of the abandonment instruction that the Supreme Court approved in Barnes, 190 Va. at 740, 58 S.E.2d at 16, reads as follows:

> The Court instructs the jury that if you believe from the evidence that the Welding Engineers maintained a dump at or near their premises and that they suffered or permitted the accused and others to reclaim metal and other scrap materials therefrom; and if you further believe from the evidence that the accused found the cable in question upon the said dump and removed it as they had been permitted to do on other occasions, under an honest belief that it was abandoned material, then you must find them not guilty.

specifically on the "statements, actions and/or conduct of *Lansing Building Products*." (Emphasis added). However, the only testimony that directly addressed the concept of abandonment did so from the perspective of *the customer's* actions and conduct. Specifically, Paul Meade, a witness for the Commonwealth, testified that sometimes the warehouse had special order materials that "somebody has abandoned" or "*the customer* has returned it, but they are not getting credit for it." (Emphasis added). Similarly, appellant testified that, when a customer does not pick up special order materials from the warehouse, "I would say [the] *customer* abandoned them, yeah." (Emphasis added). Regardless of the intentions of such customers, neither this testimony nor any other evidence in the record would support a finding that the items in this case have been abandoned *by Lansing* – the actual subject of the proposed instruction to which appellant argues he was entitled at trial. [6]

"If the instruction is not applicable to the facts and circumstances of the case, it should not be given." Sands, 262 Va. at 729, 553 S.E.2d at 736 (citing Hatcher v. Commonwealth, 218 Va. 811, 813-14, 241 S.E.2d 756, 758 (1978) (citing Banner v. Commonwealth, 204 Va. 640, 647, 133 S.E.2d 305, 310 (1963))); see LeVasseur v. Commonwealth, 225 Va. 564, 590-92, 304 S.E.2d 644, 658-59 (1983); see also Wagner v. Fiery, 206 Va. 370, 374, 143 S.E.2d 876, 879 (1965) (noting that "the tendency of [an unsupported] instruction is to mislead the jury by withdrawing their attention

---

[6] Moreover, we note that this proposed instruction refers to other instructions concerning the abandonment of property. However, no abandonment instructions were given to the jury – and no other abandonment instructions are properly before this Court on appeal. See supra note 2. Thus, even if a jury were to determine based on appellant's proposed instruction that Lansing intended to abandon the vinyl siding at issue here, there is no other instruction properly before this Court that would explain *the legal significance* of that determination or instruct the jury *what to do* based on that determination. On this record, and given the posture of this appeal, issuing appellant's proposed instruction would have served only to confuse a jury. See Gaalaas v. Morrison, 233 Va. 148, 156, 353 S.E.2d 898, 902 (1987) ("Instructions are meant to aid the jury in its deliberations, not to make such deliberations more difficult."). For this reason as well, we simply cannot conclude that the trial court committed reversible error when it refused the lone proposed abandonment instruction that is actually before this Court.

from the legitimate points involved" in the case).  No evidence in this case supports a jury question of whether Lansing actually abandoned the 288 cartons of vinyl siding that appellant sold to Tyler for $10,000 in cash.[7]  See Honsinger v. Egan, 266 Va. 269, 274, 585 S.E.2d 597, 600 (2003) (explaining that a party is only "entitled to have jury instructions that address his or her theory of the case so long as that theory is supported both by law and fact").  Accordingly, the trial court did not abuse its discretion when it refused appellant's proposed jury instruction addressing the abandonment of property.

### III. CONCLUSION

Viewing the evidence in the light most favorable to appellant since he was the proponent of the instruction, appellant's proposed jury instruction addressing the abandonment of property was not supported by more than a scintilla of evidence in the record.  Therefore, the trial court was not required to issue appellant's proposed instruction to the jury.  Accordingly, for the foregoing reasons, we affirm appellant's embezzlement conviction.

Affirmed.

---

[7] While there is evidence in the record that Lansing's materials would sometimes be discarded or even given away to employees, and while appellant testified that he was authorized to make those determinations on Lansing's behalf, the trial court did not err in concluding that such evidence related to appellant's claim of right defense against the embezzlement charge – i.e., that he had a *bona fide* claim of right to dispose of the products with which Lansing had entrusted him.