384 S.E.2d 358

**STATE of West Virginia**

v.

**Lawanna Sue GIBSON.**

No. 18624.

Supreme Court of Appeals of West Virginia.

July 27, 1989.

---

James A. Walker, Smith & Walker, Logan, for Gibson.

Thomas J. Gillooly, Dist. Atty. Gen., Charleston, for State.

WORKMAN, Justice:

This case is before the Court upon an appeal by the defendant, Lawanna Sue Gibson, from a March 1987 conviction of murder in the second degree in the Circuit Court of Logan County, West Virginia. The appellant raises numerous assignments of error; however, we find no reversible error and affirm the appellant's conviction.

It is undisputed that on May 7, 1986, the appellant shot and killed her husband, Ullie Gibson, at her apartment on Buffalo Creek, in Logan County.

At the time of the shooting, the appellant's husband was under a domestic violence order not to harass or molest the appellant and it required him to stay away from the former marital residence.[1] Further, the appellant had filed for a divorce on April 11, 1986, and the final divorce hearing was scheduled for May 9, 1986.

The evidence at trial established that on May 6, 1986, the appellant found a piece of paper with the name and phone number of a woman, Deandra Pritchard (Pritchard), who Ullie Gibson had been seeing. The appellant proceeded to have two phone conversations with Pritchard. Pritchard testified that the appellant first called her on the morning of March 7. The appellant was seeking information about the relationship between her husband and Pritchard. Then, around noon that same day, Pritchard phoned the appellant back and told her that she had been out with Ullie Gibson twice, but that, contrary to the appellant's belief, she had not had sexual relations with him.

On May 7, 1986, the appellant hitched a ride with Clarence Smoot (Smoot). Smoot testified that he took the appellant to Uncle Sam's Loans, a pawn shop. There, the appellant testified that she purchased a .22 caliber RG pistol and ammunition for personal protection from her husband, who had allegedly abused her on prior occasions. Smoot also took the appellant to a liquor store where she purchased two bottles of vodka. Both Smoot and the appellant went riding around and drinking[2] before he took her back to her home.

Between approximately 6:00 p.m. and 6:30 p.m. on May 7, Ullie Gibson appeared at the marital residence. The appellant testified that when her husband arrived at her apartment, the screen door was locked even though the main door was open. Ullie Gibson forced the door open and proceeded into the apartment. The appellant, who had been napping, awakened and removed her pistol from a closet shelf and ordered her husband to leave. She stated that her husband ignored her warnings and while cursing at her, proceeded in her direction. The appellant then fired the gun and the bullet struck her husband. Ullie Gibson managed to stagger to the door of a neighboring apartment where he died a short time later.

Following the shooting, Trooper G.R. Johnson of the West Virginia Department

---

1. The order was issued by the magistrate court of Logan County and was for a thirty day period beginning April 11, 1986. This was the second domestic violence order which appellant had obtained against her husband. There was no direct corroboration of the appellant's contentions that her husband was violent toward her, nor had the appellant ever sought contempt charges against her husband for violation of the court orders.

2. The appellant's blood alcohol level was reported at .12 when it was taken at approximately 7:45 p.m. The shooting occurred between 6:00 and 6:30 p.m.

of Public Safety arrived upon the scene to conduct the investigation. The trooper was informed by neighbors that the appellant had shot her husband. The defendant made numerous statements to neighbors and the police to the effect that she had shot her husband because he was seeing other women, and expressing satisfaction that he wouldn't be able to see these women anymore. The evidence indicated that the statements were made spontaneously, and even though some of the statements were made after the defendant was in police custody, the statements were not the result of custodial interrogation.

After the appellant was arrested, the appellant's parents arrived. They accompanied the appellant to police headquarters where appellant's father told Trooper Johnson that he did not want his daughter to make any statements. Trooper Johnson complied with the request and proceeded to take the appellant to Magistrate Court where she was arraigned.

This matter was originally scheduled for trial in Logan County Circuit Court on December 15, 1986. That trial resulted in a mistrial, and was rescheduled for March 2, 1987. It is from the conviction arising from the second trial that the appellant now appeals.

## I.

The defendant first argues that the lower court erred in overruling the defendant's motion to dismiss based upon the constitutional bar of double jeopardy. On the original trial date, a jury was empanelled and sworn, and the trial was recessed until the following day. On the next day, one of the jurors failed to appear and it was determined by the court that the juror would not return. Since no alternate jurors had been empanelled, a mistrial was declared *sua sponte* by the court[3] and a second trial was held some two and one-half months later. The defendant alleges the State violated her Fifth Amendment

rights by placing her in double jeopardy. The State, however, contends that based upon prior court decisions, the lower court's declaration of a mistrial due to failure of one of the jurors to return on the second day does not bar retrial.

Article III, Section 5 of the *West Virginia Constitution* provides, in part, "nor shall any person, in any criminal case ... be twice put in jeopardy of life or liberty for the same offence."[4] We have held that "[o]ne is in jeopardy when he [she] has been placed on trial on a valid indictment, before a court of competent jurisdiction, has been arraigned, has pleaded and a jury has been impaneled and sworn." *Brooks v. Boles,* 151 W.Va. 576, 153 S.E.2d 526, 530 (1967); *See* Syl. Pt. 1, *Adkins v. Leverette,* 164 W.Va. 377, 264 S.E.2d 154, 155 (1980).

Further, *W.Va.Code* § 62–3–7 [1931] provides, in part, that "in any criminal case the court may discharge the jury, when it appears that they cannot agree in a verdict, or that there is manifest necessity for such discharge." Consequently, if a manifest necessity existed when the judge declared the mistrial, then such action will not form the basis for a double jeopardy claim. *Keller v. Ferguson,* 177 W.Va. 616, 355 S.E.2d 405, 409 (1987); *State v. Burford,* 136 W.Va. 472, 67 S.E.2d 855, 859–60 (1951).

"The term 'manifest necessity' covers a broad spectrum of situations which in some instances bear little relationship to the literal meaning of this phrase." *Keller,* 177 W.Va. at 620, 355 S.E.2d at 409. Whatever the circumstance which cause a trial court to declare a mistrial, if that circumstance is unforeseeable in nature and makes completion of the trial impossible, a manifest necessity will be found to exist and double jeopardy will not be found to bar retrial. *State ex rel. Dandy v. Thompson,* 148 W.Va. 263, 134 S.E.2d 730, 734 (1964), *cert. denied,* 379 U.S. 819, 85 S.Ct. 39, 13 L.Ed.2d 30 (1964).

The fact that a juror failed to report back to jury duty for the second day of trial was

---

**3.** Unfortunately, a transcript of the proceedings which occurred in the first trial was not presented to this Court on appeal.

**4.** The Fifth Amendment to the *United States Constitution* provides, in part, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb...."

something that the trial court could not have predicted. The defendant argues that the failure to select an alternate juror was within the control of the trial court, and, therefore, under this Court's rationale in *State v. Little*, 120 W.Va. 213, 197 S.E. 626 (1938) a manifest necessity should not be found to exist. In *Little*, we found that where witnesses failed to return to court at the appointed hour, and as a result, a mistrial was declared at the request of the State and over the defendant's objection, the State failed in carrying its burden of justifying the discharge of the jury and therefore the defendant could not be retried due to double jeopardy. *Little*, 120 W.Va. at 214, 197 S.E. at 627.

The present case is distinguishable from *Little* in that the court *sua sponte* declared a mistrial without objection from either the prosecution or the defendant. Further, *W.Va.Code* § 62–3–3 [1949] provides that "[w]henever, in the opinion of the court the trial is likely to be a protracted one, the court *may* direct that not more than four jurors, in addition to the regular jury, be called and impanelled to sit as alternate jurors." (emphasis added). No mandatory duty is placed upon the trial court to select alternate jurors. Even though the selection of alternate jurors is within the discretion or control of the trial court, it is important to note that from the record on appeal, the defendant did not request alternate jurors and did not object when alternate jurors were not selected.[5]

The decision of the trial court to discharge a jury without a verdict being rendered is a discretionary act which will "only be reversed for abuse of discretion." *State v. Oldaker*, 172 W.Va. 258, 265, 304 S.E.2d 843, 849 (1983); *See also State ex rel. Brooks v. Worrell*, 156 W.Va. 8, 190 S.E.2d 474, 476 (1972); *Dandy*, 148 W.Va. at 269, 134 S.E.2d at 734. The trial court

did not abuse its discretion and therefore, reversal on these grounds is not warranted.

## II.

▉▉▉ Next, the defendant argues that the trial court erred in overruling the defendant's motion to suppress certain statements made by the defendant against her interests. The statements made by the defendant included the following made immediately after the shooting:

—asked (by Timothy Boykins, a neighbor) "what she shot him with," she answered ".22."

—asked (by Boykins) "why she did this," she responded because he (her husband) "kept fucking around on her."

While in police custody and after being advised of her rights, the statements made by the defendant included:

—"He won't be fucking his whores anymore."

—"He fucked over me for the last time."

—Trooper G.R. Johnson testified that "she also stated we can call them up and invite them to the funeral ... and she repeated this several times...."

—Magistrate Codispoti testified that she said "I shot the mother fucker. You can tell the rest of them fucking whores that he's dead. I killed him and he won't fuck over me no more."

The defendant contends that the trial court erred by allowing into evidence those statements made by the defendant when the State had not proved by preponderance of the evidence that the statements were voluntarily made. The State contends that the lower court's decision not to suppress defendant's spontaneous statements does not constitute error.

The appellant argues that the statements were not voluntarily made based on this Court's decision in *State v. Sanders*, 161 W.Va. 399, 242 S.E.2d 554 (1978), *over-*

---

**5.** This argument asserted by the defendant is based upon our holding in *Dandy*. In that case, the jury was dismissed before a verdict was rendered where the Court declared a mistrial for the reason that it had erroneously permitted certain evidence to be introduced rather than striking the evidence. Consequently, we held that "[w]here the ground upon which the court

relied to discharge the jury was a circumstance over which the court had control and which, by the exercise of due diligence, it could have prevented, no manifest necessity existed which would warrant the declaration of a mistrial." 148 W.Va. at 269, 134 S.E.2d at 734–35. We find, however, that the holding in *Dandy* is not applicable to the present case.

*ruled in part on other grounds, State ex rel. White v. Mohn*, 168 W.Va. 211, 283 S.E.2d 914 (1981). In *Sanders* we held:

> In a trial for murder where the defendant raises insanity as the sole defense, the court upon request should conduct an *in camera* hearing to determine whether incriminating statements made by the defendant to a third party while in a hospital emergency room shortly after committing the homicide, attempting suicide, and having been diagnosed by the attending staff psychiatrist as 'suicidally depressed and mentally ill,' were voluntary and admissible into evidence.

161 W.Va. at 404, 242 S.E.2d at 557.

This holding is simply not applicable to the present case. First and foremost, the defendant did not allege the insanity defense as any part of her defense. Second, there was no physician who examined the defendant at or near the time of the murder who described her as "suicidally depressed and mentally ill." Finally, all that *Sanders* requires is that the trial court conduct an *in camera* hearing to determine whether the defendant's statements were voluntarily made. In this case, the trial court did conduct a hearing on defendant's motion to suppress evidence and presumably the voluntariness issue was addressed.[6]

Additionally, some of the statements were made by the defendant in front of neighbors and bystanders immediately after her husband was shot and prior to the police arriving. These statements can be admitted into evidence without an in camera hearing to determine the voluntariness, since they were spontaneous statements made prior to any action by the police in a non-custodial setting. *White*, 168 W.Va. at 216, 283 S.E.2d at 917; *See also State v. Baker*, 180 W.Va. 233, 376 S.E.2d 127, 131 (1988).

As to the statements made to the police and the magistrate subsequent to arrest and to *Miranda*[7] warnings, we conclude that the trial court did not err in finding these statements to be voluntarily given to the police. The facts before us do not indicate that these statements resulted from any form of interrogation by the police, but rather were made by the defendant voluntarily after being given the *Miranda* warnings.[8] " 'A trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence.' " *State v. Dean*, 178 W.Va. 581, 584, 363 S.E.2d 467, 470 (1987) (quoting Syl. Pt. 3, *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978)).

### III.

The defendant's next assignment of error is that the lower court improperly overruled the defendant's motion to suppress all evidence pertaining to the use of Deandra Pritchard as a witness, and further erred in denying the defendant the opportunity to introduce additional evidence on that issue.

The problem in reviewing this matter is that the record before this Court is void of the suppression hearing proceedings. There are, however, enough facts present to indicate that the lower court did conduct a suppression hearing regarding the manner in which Pritchard's phone number was obtained by the police, particularly Trooper

---

6. The defendant failed to send the entire record of the suppression hearing to this Court, choosing only to send excerpts favorable to the defendant's position, thus effectively precluding a complete review of the issues raised on appeal.

7. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

8. 'A statement freely and voluntarily made by an accused while in custody or deprived of his freedom by the authorities and subjected to questioning is admissible in evidence against him if it clearly appears that such statement was freely and voluntarily made after the accused had been advised of his constitutional right to remain silent and that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney and if he cannot afford an attorney one will be appointed for him, and that, after he has been so advised, he knowingly and intelligently waives such rights.' Syl. Pt. 7, *State v. Moss,* 180 W.Va. 363, 376 S.E.2d 569, 571 (1988) (quoting Syl. Pt. 7, *State v. Plantz,* 155 W.Va. 24, 180 S.E.2d 614 (1971), *overruled in part on other grounds, Mohn,* 168 W.Va. at 211, 283 S.E.2d at 914)).

Johnson, and that the lower court denied the defendant's motion.

The defendant asserts that the testimony of Trooper Johnson offered at trial conflicted with the testimony the trooper gave at the suppression hearing. Further, the defendant sought to introduce evidence before the lower court that after the suppression hearing, one of the defendant's attorney's, William Field, obtained information that Trooper Johnson got the name and address of Pritchard through the questioning of the defendant in jail on the evening of the shooting, after the defendant had refused to waive any of her rights and had requested court-appointed counsel.

The record simply does not support either of the defendant's assertions. First, nothing in the record supports the defendant's contention that Trooper Johnson's testimony at trial was contradictory to that which occurred at the suppression hearing. During the suppression hearing, the trooper indicated he obtained the piece of paper during a pat-down search. At trial, the trooper testified during direct examination as follows:

(By Mr. Wandling, Prosecuting Attorney)
Q: What happened when you walked up there?
A: I walked up and advised her that I was going to pat search her looking for a weapon and that's when Boykins spoke up and said that she had taken the gun around back and laid it down, but I went ahead and pat searched her just to be on the safe side because there was a little question of whether or not she had taken the gun out back.
Q: At this time when you first approached her, did she say anything to you?
A: No, not immediately right there, no.
Q: What did you do after that?
A: Okay. She was there with Boykins, so I went around back and got the gun.

As the trooper's testimony reflects, he was not asked whether or not he found the piece of paper containing Pritchard's phone number on the defendant during the pat-down search. There is no contradictory testimony and if there would have been, the defendant could have impeached the trooper's credibility on this basis.

Second, the trial court not only heard and ruled on the defendant's suppression motion once, but twice. The first suppression hearing was conducted before the trial began. The defendant again moved the court to suppress Pritchard's testimony after Pritchard was called as a witness, but before she took the witness stand. The defendant then argued before the lower court that Pritchard's name and address was obtained by the police as a result of questioning of the defendant without her attorney being present. The trial judge simply found that there was no factual basis for granting the defendant's motion. Based upon the record before the Court, we find that the lower court committed no error, since, "[a]s a general rule, proceedings of trial courts are presumed to be regular, unless the contrary affirmatively appears upon the record...." Syl. Pt. 17, in part, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445, 449 (1974).

### IV.

■■ The defendant argues that the procedures used by the trial court in its selection of the jury venire were improper. The defendant contends that *W.Va.Code* § 52–1–4 [1945][9] states that in counties with a population of fifty thousand (50,000) or greater "the jury commissioners shall be required to have at least eight hundred (800) names in such lists." The defendant asserts that the *West Virginia Bluebook* listed the population of Logan County, West Virginia in 1987[10] as fifty thousand, six hundred and seventy-nine (50,679). Therefore, there should have been eight hundred (800) names on the master jury list and "[t]he defendant believes and is informed that the procedure required for juror service for Logan County was not fol-

---

**9.** *W.Va.Code* § 52–1–4 [1945] was amended in 1986 and the provision cited above is now found in *W.Va.Code* § 52–1–6 [1988], as amended.

**10.** The defendant was convicted on March 3, 1987.

lowed and that the master jury list did not contain at least eight hundred (800) names of persons eligible for jury duty." Appellant's Brief at 21.

The problem with the argument the appellant now makes is there was no objection made by the appellant as to the procedures used in selecting the jury at the lower court level. Even though the appellant now has a new attorney who wishes to raise this issue, "[t]his Court will not consider an error which is not preserved in the record nor apparent on the face of the record." Syl. Pt. 11, *State v. McFarland,* 175 W.Va. 205, 332 S.E.2d 217, 221 (1985) (citing Syl. Pt. 6, *State v. Byers,* 159 W.Va. 596, 224 S.E.2d 726 (1976)). With no objection being made and no error apparent on the face of the record, we find no merit in this assignment of error.

### V.

■ The next assignment of error raised by the appellant is that the lower court erred in unreasonably restricting the voir dire of prospective jurors, thereby preventing a meaningful utilization of preemptory challenges and challenges for cause. Specifically, the appellant contends that the trial court erred in refusing to propound two questions to the jury.[11]

The defendant, at trial, did not object to question nine (9) not being asked the jury. Further, question seven (7) was not objected to by the defendant's counsel until after the jury had been empanelled and sworn.

Again, this court will not review errors which were not properly preserved in the record. *See* Syl. Pt. 11, *McFarland,* 175 W.Va. at 209, 332 S.E.2d at 221; Syl. Pt. 6, *Byers,* 159 W.Va. at 597, 224 S.E.2d at 729. Additionally, in a criminal case, inquiry made of a jury on its voir dire is within the sound discretion of the trial court and not subject to review except if the court abuses its discretion. *State v. Mayle,* 178 W.Va. 26, 30, 357 S.E.2d 219, 223 (1987). We find no error by the trial court regarding this matter.

### VI.

■ The defendant asserts that the lower court erred and abused its discretion when it refused to allow the defendant to present to the jury two witnesses, Sherry Kim Ballard and Lori Pelletier. These two witnesses, according to the defendant's attorney at trial, were going to testify about counselling the defendant received subsequent to the death of her husband. The testimony was objected to on the basis of relevancy. The lower court sustained the objection finding that the testimony would not be relevant.[12]

*W.Va.R.Evid.* 401 defines relevant evidence as that evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence which is found by the trial court to be not relevant is inadmissible. *W.Va. R.Evid.* 402.

---

11. The two questions were as follows:
7) Are there any members of the jury who have a bias or prejudice against psychologists, that is mental health professionals who study human behavior, to such extent that you could not fairly consider their testimony and opinions and give them like weight with other evidence and testimony in this case?
9) In the course of your deliberations about the facts of this case you may be asked to make a determination about the voluntariness of some statements made by Lawana [sic] Sue Gibson. Voluntariness, in a legal sense, has an independent psychological significance that extends beyond describing improper police techniques and goes to the issue of whether or not such statements were the product of a rational intellect and a free will or were the product of a reasoned choice. If such consid-

erations are required the government must prove by a preponderance of the evidence that such statements were voluntary. If you find such statements were involuntary in the sense that they were not the product of a rational intellect can you completely disregard such statements and base your verdict solely on the balance of the evidence and law as given to you by the Court?

12. In the case of witness Sherry Kim Ballard, the defendant's attorney never actually called her as a witness. Since she wasn't called, and no objection made, the error in the record was not properly preserved regarding to this witness. *See W.Va.R.Evid.* 103(a). In the case of witness Lori Pelletier, the defendant's attorney called her, but she was not permitted to testify based on the lower court's decision.

The trial court found that the testimony of the witness concerning the mental state of the defendant after the crime occurred was not relevant to proving whether or not the defendant was guilty or innocent of the charges alleged. We find the trial court committed no error in its determination.

### VII.

 The defendant also argued that the trial court erred in not directing a judgment of acquittal at the close of the State's case and at the close of the trial when the State failed to establish beyond a reasonable doubt that the defendant did not act in self-defense.

In Syl. Pt. 6, *State v. McKinney,* 178 W.Va. 200, 202, 358 S.E.2d 596, 598 (1987) we held that "[o]nce the defendant meets his initial burden of producing some evidence of self-defense, the State is required to disprove the defense of self-defense beyond a reasonable doubt." *See State v. Kirtley,* 162 W.Va. 249, 252 S.E.2d 374 (1978).

While a review of the record shows defendant did present evidence tending to show that the shooting was done in self-defense, thereby switching the burden of proof to the State to prove beyond a reasonable doubt that it was not done in self-defense, the State likewise presented evidence that the shooting was not done in self-defense. This evidence refuting the defendant's claim of self-defense was sufficient to carry the issue to the jury.

Upon review of the record and in light of the fact that " '[i]n an appeal from a verdict of guilt in a criminal trial, the evidence is to be viewed in the light most favorable to the prosecution,' " we find that the trial court did not err in refusing to direct a verdict in favor of the defendant. Syl. Pt. 1, *State v. Hall,* 172 W.Va. 138, 140, 304 S.E.2d 43, 45 (1983) (citing Syl. Pt. 1, in part, *State v. Starkey,* 161 W.Va. 517, 244 S.E.2d 219 (1978)).

### VIII.

 Finally, the defendant argues that the accumulation of errors requires reversal of the conviction. Before the Court could reverse on the basis of the cumulative effect of the assigned errors, the defendant must show that "the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial...." Syl. Pt. 5, in part, *State v. Smith,* 156 W.Va. 385, 193 S.E.2d 550, 551–52 (1972). This simply has not been demonstrated.

Based upon the foregoing, the judgment of the Circuit Court of Logan County is affirmed.

Affirmed.