386 S.E.2d 496

**STATE of West Virginia**

v.

**Alfred Lee WEAVER.**

**No. 18464.**

Supreme Court of Appeals of West Virginia.

Nov. 3, 1989.

Paul M. Blake, Jr., Fayetteville, for Alfred L. Weaver.

Richard M. Riffe, Asst. Atty. Gen., Charleston, for State.

PER CURIAM:

This case is before the Court upon the appeal of Alfred Lee Weaver from the January 22, 1987 Fayette County Circuit Court order which denied the appellant's motion to set aside a jury verdict finding the appellant guilty of second degree sexual assault. The appellant was sentenced to serve an indeterminate term of ten to twenty years in the penitentiary. Since the appellant's defense to the charge was consent, and the State provided proof of forcible compulsion through the prosecutrix's testimony, the jury's assessment of the prosecutrix's credibility will not be reversed on appeal. We affirm. Syl. pt. 4, *State v. Beck,* 167 W.Va. 830, 286 S.E.2d 234 (1981).

The appellant was indicted for the second degree sexual assault of a female "hitchhiker" on November 3, 1985, around 3:00 p.m.[1] On July 21, 1986, the trial court

---

1. The indictment reads that the appellant did "unlawfully and feloniously commit a sexual assault upon one [P.S.] engaging in sexual intercourse with her, the said [P.S.], by forcible compulsion, she, the said [P.S.], not being a voluntary social companion of Alfred Lee Weaver on the occasion of the sexual assault[.] 61–8B–3"

The appellant moved to quash the indictment prior to trial, because *W.Va.Code,* 61–8B–3(a)(1)(i) and (ii) [1984], the *first* degree sexual assault statute, contains the additional pertinent element, either serious bodily injury, or use of a deadly weapon.

The trial judge found that the indictment sufficiently averred facts to describe sexual assault

granted the appellant's motion for a mistrial due to the prosecutor's reference to a certain newspaper article concerning the case. The case was eventually tried, and a new jury selected.[2]

The prosecutrix testified that while she was hitchhiking, the appellant provided her a ride in his truck. He drove to a secluded area, and forcibly engaged in sexual intercourse with her by choking her and threatening her with a hammer. The prosecutrix testified that the appellant's hand remained on her throat during intercourse. He then threw her from the truck and drove away. The prosecutrix testified that she noted the

appellant's license plate number, West Virginia 8CG993, which she kept repeating to herself as she fled for safety to a nearby home. The resident of the home testified that the prosecutrix arrived at her doorstep crying and appearing "very upset." "[S]he had remembered a license number and she wanted to hurry up and get the state police[.]"

■ Members of the Department of Public Safety arrived and processed the license information, which resulted in the arrest of the appellant, after he was identified by the prosecutrix.[3]

---

in the second degree. Sexual assault in the second degree is defined, in pertinent part, in *W.Va.Code*, 61–8B–4(a)(1) [1984] as engaging "in sexual intercourse ... without another person's consent and the lack of consent results from forcible compulsion."

The trial judge further struck the language in the indictment concerning a "voluntary social companion" as mere surplusage. Former *W.Va. Code*, 61–8B–3(iii) [1976] required proof that the victim was not a voluntary social companion for a *first* degree sexual assault conviction.

Since the indictment followed the language of *Code*, 61–8B–4, the second degree sexual assault statute, the trial judge could properly find that the indictment was sufficient. Syl. pt. 3, *State v. Neary*, 179 W.Va. 115, 365 S.E.2d 395 (1987). Further, since the averment concerning a "voluntary social companion" is not an element of second degree sexual assault, the trial judge properly struck the language as surplusage, and properly refused to allow the appellant's counsel to argue to the jury that the State failed to prove that the victim was not a voluntary social companion. Syl. pts. 13 and 15, *State v. Cook*, 175 W.Va. 185, 332 S.E.2d 147 (1985).

2. Counsel initially requested individual *voir dire* of the panel concerning race and publicity. The trial judge stated that he would permit *voir dire* of the panel, and permit individual *voir dire*, if necessary. Following *voir dire* of the panel, the judge inquired as to the acceptability of the panel. Counsel responded that the panel was acceptable and did not request individual *voir dire*. Therefore, any alleged error by counsel concerning *voir dire* has been waived. Syl. pt. 8, *State v. Bongalis*, 180 W.Va. 584, 378 S.E.2d 449 (1989). *See also* syl. pt. 7, *State v. Gibson*, 181 W.Va. 747, 384 S.E.2d 358 (1989).

Similarly, during the course of the trial, a newspaper article, adverse to the defendant, was published. Trial counsel moved for *voir dire* of the jurors, "preferably individually." The trial judge conducted *voir dire* through a collective inquiry of the jury, and informed counsel that if he received an indication of exposure to the article, he would permit individual *voir dire*.

None of the jurors indicated that they had read the article.

Since the appellant presented no evidence concerning access to the article, the trial judge could properly refuse individual *voir dire*. *State v. Williams*, 172 W.Va. 295, 305 S.E.2d 251 (1983). We also note that, due to the outcome of the appellant's first trial, the trial judge went to great lengths at the outset of the proceeding to avoid a mistrial due to media exposure.

3. The police photographed the appellant shortly after the arrest. The photo was admitted for the purpose of establishing the accuracy of the prosecutrix's description of her assailant. The appellant contends that the photograph, taken shortly after the incident is "very uncomplimentary." We see no error. Syl. pt. 1, *State v. Audia*, 171 W.Va. 568, 301 S.E.2d 199 (1983), *cert. den'd., Audia v. State*, 464 U.S. 934, 104 S.Ct. 338, 78 L.Ed.2d 307 (1983).

A witness, who knew the appellant, also identified the prosecutrix through a photograph which was taken a few months after the incident. The witness identified the prosecutrix as being the white woman he saw with the appellant in the appellant's truck on the date of the incident. We see no reversible error in the admissibility of this photo under *Audia, supra*, which the appellant contends was offered to foster sympathy for the prosecutrix. The photos are ordinary frontal and profile pictures of the prosecutrix.

In a related matter, this witness testified that he saw the appellant with "a white woman." The appellant is a black male. His wife is white. The black prosecutor later asked the appellant, "I believe your wife is white, isn't she?" Prior to answering the question, counsel objected. The court sustained the objection and instructed the jury to disregard the question.

Counsel moved for a mistrial, which was denied by the court. The court then offered to provide the jury a cautionary instruction which counsel refused. At the close of the evidence, however, the court again instructed the jury to disregard questions to which objections were

Initially, when questioned by members of the Department of Public Safety, the appellant stated that he had never met the prosecutrix. He further denied owning a pair of green coveralls that were identified by the victim as those worn by her assailant. The green coveralls were subsequently located at the bottom of the appellant's clothes hamper.

At trial the appellant testified that he was married and provided a ride for the prosecutrix, who was hitchhiking. Contrary to the prosecutrix, he testified that the prosecutrix offered to engage in sexual intercourse with him if the appellant would drive her farther than he had originally intended. The appellant testified that the two engaged in voluntary sexual intercourse. He felt guilty and asked her to leave the truck prior to reaching the farther destination.[4] He then testified that the white prosecutrix racially slurred the appellant, a black man, and threatened to "get" him.

■ The investigating officer and an examining physician confirmed that the prosecutrix had marks on her neck, and was distraught when they saw her, shortly after the incident.[5]

Following instructions and closing arguments,[6] the jury deliberated and convicted the appellant of second degree sexual assault.

■ We first articulated the standard for appellate review of rape convictions in syllabus point 4 of *State v. Green*, 163 W.Va. 681, 260 S.E.2d 257 (1979): "A conviction for rape may be had on the uncorroborated testimony of the female, and unless her testimony is inherently incredible her credibility is a question for the jury."

We subsequently re-evaluated *Green*, and adopted the standard for all sexual offenses in syllabus point 5 of *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981), wherein we held that "[a] conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible, the credibility is ordinarily a question for the jury."

■ At trial, the only disputed element of the crime of second degree sexual assault was forcible compulsion. The prosecutrix testified that the appellant choked her while engaging in sexual intercourse, and threatened her with a hammer. Other witnesses testified as to her demeanor and appearance immediately following the incident. Based on this testimony, the trial court did not err in denying the motion for acquittal, or the motion to set aside the

sustained. Based on the totality of the circumstances, we see no reversible error regarding the prosecutor's question. Syl. pt. 5, *State v. Ocheltree*, 170 W.Va. 68, 289 S.E.2d 742 (1982).

4. The appellant contends that the trial court erred when it denied the appellant's motion to require the State to determine and divulge the intended destination of the prosecutrix.

The investigating officers admitted prior to trial that they did not ask the prosecutrix her destination. The prosecutor spoke with the prosecutrix just prior to trial and informed the appellant that the prosecutrix intended to visit her grandmother.

Counsel extensively cross-examined the prosecutrix on the matter. Counsel contends that had the information been disclosed prior to trial "possible exculpatory evidence" may have been discovered. We see no reversible error. Syl. pts. 4 and 5, *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982).

5. An order to compel discovery was never entered in this case. The examining physician brought his notes from the examination with

him when testifying. These documents were not previously provided to either the State or the defense and were not admitted into evidence. The doctor was permitted to testify that the prosecutrix had marks on her neck. This fact was previously noted in the testimony of the investigating officer.

Therefore, we see no reversible error in regard to the testimony as the nondisclosure was unintentional, the testimony was repetitive and the documents were not within the control of the State. Syl. pt. 7, *State v. Murray*, 180 W.Va. 41, 375 S.E.2d 405 (1988); syl. pt. 5, *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982).

6. We need not address the appellant's contention that the trial court improperly permitted the State to argue that the appellant, who admitted to engaging in sexual intercourse with the prosecutrix, had seminal stains on his pants, a fact not in evidence, because the issue was not argued in appellant's brief. *State v. Moran*, 168 W.Va. 688, 688 n. 1, 285 S.E.2d 450, 452 n. 1 (1981).

verdict as the jury could properly find the prosecutrix's testimony credible.

Affirmed.