# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 19-1024** (Mercer County 18-F-148-WS)

**Roger Lee Lemons, Jr.,**
**Defendant Below, Petitioner**

**FILED**

**March 23, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Roger Lee Lemons, Jr., by counsel David B. Kelley, appeals from the Circuit Court of Mercer County's August 9, 2019, order memorializing the jury verdict and the circuit court's October 8, 2019, order denying his motion for a new trial. The State of West Virginia, by counsel Andrea Nease Proper, filed a response in support of the circuit court's orders.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

On December 23, 2017, Angela Seal obtained an emergency domestic violence protective order ("DVP") against petitioner, her boyfriend, noting that he had threatened to strangle her. Petitioner, who had been living with Ms. Seal, was served with the DVP on that same day, and he was escorted out of the apartment by law enforcement.

On December 24, 2017, Ms. Seal's cousin could not reach her by phone. Ms. Seal's cousin went to Ms. Seal's residence the following day. Upon his arrival, the cousin discovered Ms. Seal's body and reported his findings to the police. Responding officers from the West Virginia State Police ("WVSP") came to the residence to secure the scene. The medical examiner also came to the scene and transported Ms. Seal's body to Princeton Community Hospital for further examination.[1]

---

[1] When the medical examiner discovered a number of stab wounds to Ms. Seal's neck, he alerted the WVSP of his findings so that they could photograph the wounds.

In addition to the WVSP, the Princeton Police Department also responded to the scene. Officers from both departments conducted a search of the residence and the surrounding areas, including the alleyway behind the residence. During their investigation, officers uncovered a knife handle and a blade that fit the handle, Ms. Seal's keys, and the remains of Ms. Seal's cell phone, which were scattered in the alley behind the residence. The investigating officers also spoke with a neighbor who saw petitioner at the residence after he was served with the DVP.

Petitioner voluntarily went to the police department on Christmas Day. After being given his Miranda warnings,[2] he gave a statement to the officers and allowed the officers to view the contents of his cell phone. Petitioner did not volunteer any information relevant to the murder investigation and was not detained or under arrest at that time.

Petitioner was arrested the following day, on December 26, 2017, on several charges, including outstanding warrants for public intoxication, failure to pay a child support obligation, and violation of the DVP obtained by Ms. Seal. After he was arrested, he was not processed immediately, but instead was held until the lead investigator returned to the police department. Before petitioner received any *Miranda* warnings on December 26, 2017, he made several statements which are at issue on appeal as to his DNA being on the victim's keys and on the murder weapon. The lead investigator asked petitioner to submit to a cheek swab and fingernail scraping, and petitioner consented.

Petitioner was indicted on June 12, 2018, on one count of violation of a protective order, one count of strangulation, and one count of first-degree murder. Petitioner moved to sever the DVP violation from the remaining counts, arguing that evidence from this count would be prejudicial to petitioner if it was not severed from the other counts. The court denied petitioner's motion to sever reasoning that "I think in the murder case [the State is] entitled to get into that as part of the motive."

Petitioner also filed motions to exclude or suppress evidence, and several hearings were held on the suppression issues. First, petitioner moved to exclude information obtained from his cell phone, arguing that the phone was searched without his permission and then seized, making the information that was later obtained pursuant to a search warrant the fruit of the poisonous tree, due to the initial illegal search. Petitioner maintained that the officers did not know that there was any evidence on the phone that was at risk of being destroyed.

At a hearing on October 19, 2018, Detective Butler from the WVSP testified that he seized petitioner's cell phone to prevent the destruction of evidence due to exigent circumstances after petitioner voluntarily gave him the phone to review because petitioner was a prime suspect in the murder investigation. Another officer testified that petitioner allowed them to review the contents of the phone and noted that all call logs and all but one text message had been deleted. The officer testified that he seized the phone to prevent the destruction of further evidence on December 25, 2017. Although petitioner had allowed the investigating officers to view his phone, he did not agree to the seizure of the phone. However, the phone was not formally searched until after a search warrant was obtained.

---

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

Petitioner also moved to exclude statements that he made to the investigating officers due to the prompt presentment rule. He maintained that he was kept in custody for several hours while the officers were attempting to obtain a confession from him, despite the fact that he had requested an attorney. The State argued that for the prompt presentment rule to apply, the purpose of the delay had to be to obtain a statement, which did not occur in this case. Specifically, when petitioner gave Detective Butler permission to obtain a DNA swab, the officer told petitioner that Ms. Seal's keys were found to which petitioner responded that his DNA would be on the keys because he also used them.[3] Also, Detective Butler told petitioner that the murder weapon was found, to which petitioner replied that his DNA would be all over Ms. Seal's knives, although petitioner had not been told that the murder weapon was a knife. The officer testified that he was not asking petitioner questions but was responding to petitioner's questions about the investigation. Petitioner maintained that although the officer was not technically asking him questions, he was offering details of the investigation and eliciting responses, which is the same thing.

When the circuit court examined the suppression issue, it found that because petitioner was clearly in custody on December 26th, the issue was whether petitioner was interrogated. After thoroughly considering the testimony, the court found that petitioner was not being interrogated by the officer at the time that he gave his statements and therefore he did not require a *Miranda* warning. Additionally, the circuit court examined petitioner's prompt presentment argument and found that petitioner was arrested in the early morning but was not presented to the magistrate until the evening. However, the court found that the primary reason for the delay in presentment was not to obtain a statement, as Detective Butler did not question petitioner. Thus, the circuit court found there was no prompt presentment violation.

Petitioner's case was tried to a jury in August of 2019. He was convicted of second-degree murder and violation of a protective order; the resulting order was entered on August 9, 2019. On September 9, 2019, he filed a motion for judgment of acquittal notwithstanding verdict and/or new trial. This motion was denied by order entered on October 8, 2019. Petitioner appeals from these orders.

On appeal, petitioner raises multiple assignments of error. He argues that the circuit court erred when it made several evidentiary rulings. Initially, he alleges that the circuit court erred when it admitted his cell phone information and records, his statement to police, and prejudicial assumptions made by witnesses. Next, petitioner argues that the circuit court erred when it denied his motion to sever the offense of violation of a protective order from the other charges in the indictment. Further, he claims that there was insufficient evidence presented to the jury to justify his second-degree murder conviction. Finally, he contends that the circuit court erred in denying his motion for a new trial. We will address these issues in turn.

On appeal, petitioner claims that the circuit court erred when it admitted testimony and evidence concerning his cell phone at the trial of this matter. Petitioner concedes that he allowed the officers to review his phone but contends that he did not authorize the officers to seize the

---

[3] Petitioner also moved to suppress this DNA evidence arguing that it was obtained by duress, noting he was refused food and water but told officers he would consent to a DNA swab if he could get food and be allowed to smoke.

phone. Thus, he argues that "[a]ny and all evidence obtained from [petitioner's] cell phone including, but not limited to, call logs, text messages, tracking [petitioner's] movements via third-party cell towers, any opinions or testimony by any and all police officers as to information being deleted from the cell phone, and all other information recovered from the cell phone should have been excluded."

We have stated that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998).

We recently addressed the seizure of a phone in *State v. Deem*, __ W. Va. __, 849 S.E.2d 918 (2020). In *Deem*, unlike the present case, petitioner refused to give officers the phone when they asked. However, this case is analogous to *Deem* in that both petitioner and Mr. Deem sought return of the phone. The officers in *Deem* believed that seizure of the phone was necessary to prevent destruction of potential evidence. On appeal, we found that exigent circumstances existed that would lead a reasonable, experienced officer to believe that the warrantless seizure of the cell phone was necessary to prevent the destruction of or damage to potential evidence within. *Id.* at 927. As we set forth in *Deem*,

> [e]xigent circumstances "may exist . . . when police reasonably believe [that] quick action is necessary to prevent the destruction of potential evidence . . . ." "The test for the existence of exigent circumstances is whether the facts would lead a reasonable, experienced police officer to believe the evidence might be destroyed or removed before a warrant could be secured." "The existence of a reasonable belief should be analyzed from the perspective of the police officers at the scene; an inquiring court should not ask what the *police* could have done but whether they had, at the time, a reasonable belief that there was a need to act without a warrant." Ultimately, the test for exigent circumstances is an objective one based on the totality of the circumstances.

__ W. Va. at __, 849 S.E.2d at 924 (footnotes and citations omitted) (emphasis in original).

When petitioner allowed the investigating officers to view his phone, they found that all call logs and all but one text message had been deleted. Considering that petitioner was a suspect in Ms. Seal's murder – where he was the victim's boyfriend, he had a DVP filed against him by the victim a few days earlier, and he was seen at the victim's residence after he was barred from the premises by the DVP – the police immediately feared that petitioner had or was attempting to destroy evidence. Here, the facts and circumstances supported probable cause. Thus, akin to *Deem*, and viewing the circuit court's ruling from the perspective of the police officers at the scene, it appears that exigent circumstances existed to act without a warrant. Since seizure of the phone was appropriate, this assignment of error fails.

Next, petitioner argues that the circuit court erred when it admitted certain statements, that could have been interpreted as self-incriminating, to police following his arrest on December 26, 2017, when he was not given a renewed *Miranda* warning. He asserts that the prompt presentment rule was violated. Further, he claims that his statements were obtained by duress and taken in

violation of his Fifth Amendment right against self-incrimination. The State maintains that the delay in presentment was reasonable and that the purpose of any delay was not to obtain a confession from the defendant. We agree with the State.

Prompt presentment is a statutory rule:

An officer making an arrest under a warrant issued upon a complaint, or any person making an arrest under a warrant issued upon a complaint, or any person making an arrest without a warrant for an offense committed in his presence or as otherwise authorized by law, shall take the arrested person without unnecessary delay before a magistrate of the county where the arrest is made.

W. Va. Code § 62-1-5(a)(1) (1997). West Virginia's prompt presentment rule "is triggered when an accused is placed under arrest," or "once a defendant is in police custody with sufficient probable cause to warrant an arrest." Syl. Pt. 3, in part, *State v. Wickline*, 184 W. Va. 12, 399 S.E.2d 42 (1990). The prompt presentment rule "requires an individual to be promptly taken before a neutral magistrate after arrest. This is to ensure that the accused is fully informed of his various constitutional and statutory rights." *State v. Grubbs*, 178 W. Va. 811, 814, 364 S.E.2d 824, 827 (1987).

However, it is not delay itself that triggers application of the rule. Instead, the delay in taking a defendant to a magistrate may become a critical factor in evaluating the voluntariness of a defendant's statement "where it appears that the primary purpose of the delay was to obtain a confession from the defendant." Syl. Pt. 6, in part, *State v. Persinger*, 169 W. Va. 121, 286 S.E.2d 261 (1982).

The circuit court specifically found that there was no testimony that petitioner made the statements out of duress. Upon our review of the record, we agree with the circuit court and note that petitioner failed to prove that he made any statements under duress. There was no evidence elicited as to how long petitioner was even in custody prior to being taken to the magistrate. Since petitioner did not present evidence of this below, this Court has recognized that "[a] party cannot establish facts in a case by asserting them in a brief. Those are nothing more than an attorney's statements, which are not evidence." *State v. Benny W.*, 242 W. Va. 618, 629, 837 S.E.2d 679, 690 (2019). Further, as petitioner's claim is based entirely on counsel's statements, it is not sustainable.

Additionally, the circuit court found that although petitioner was in custody, he was not subject to custodial interrogation when the relevant statements were made. This Court has noted that "[i]t is well-settled that a person's *Miranda* right to counsel attaches only when the person is subject to custodial interrogation: 'Two elements must be present before *Miranda* warnings are required: first, the person must be in custody, and, second, he or she must be interrogated.' *State v. Honaker*, 193 W. Va. 51, 60, 454 S.E.2d 96, 105 (1994)." *State v. Farley*, 238 W. Va. 596, 606-07, 797 S.E.2d 573, 583-84 (2017). *Miranda* defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444. Further, this Court expanded its discussion on how to define custodial interrogation stating:

The factors to be considered by the trial court in making a determination of whether a custodial interrogation environment exists, while not all-inclusive, include: the location and length of questioning; the nature of the questioning as it relates to the suspected offense; the number of police officers present; the use or absence of force or physical restraint by the police officers; the suspect's verbal and nonverbal responses to the police officers; and the length of time between the questioning and formal arrest.

*Farley,* 238 W. Va. at 601, 797 S.E.2d 572, Syl. Pt. 4, in part.

Applying the *Farley* factors, it is apparent that petitioner's statements were not made during the course of a custodial interrogation, but were merely inculpatory statements made to an officer. Based upon our review of the record, there was no questioning by the officer. Additionally, the officer did not hold petitioner outside for a long time, as the two were outside so petitioner could smoke at petitioner's request, rather than any nefarious attempt to corner him. Moreover, petitioner was with only one officer – not a fleet of officers. He was not physically restrained nor was there anyone using or attempting to use force against him. This Court has repeatedly affirmed cases where an inculpatory statement was made to an officer outside of a custodial interrogation. In *State v. Bouie,* 235 W. Va. 709, 776 S.E.2d 606 (2015), this Court found that the defendant's rights were not violated when he asked a police officer for a copy of the criminal complaint against him and then indirectly admitted his presence on the premises, and, in turn, confirmed his role in the victim's death. That is precisely the case here: petitioner asked about the investigation, and once he was told by the detective what had been found, he made inculpatory statements, including identifying the then-undisclosed murder weapon as a knife and confirming his fingerprints would be on it.

Further, this Court has held that "[a] spontaneous statement by a defendant made prior to any action by a police officer or before an accusation, arrest or any custodial interrogations is made or undertaken by the police may be admitted into evidence without the voluntariness thereof first having been determined in an *in camera* hearing." Syl. Pt. 4, in part, *State v. Gibson*, 181 W. Va. 747, 384 S.E.2d 358 (1989). Here, the statements were voluntary and were given prior to petitioner's arrest on the murder charge. Petitioner has not shown that he made the statements under duress, despite his blanket assertion that his statements were made against his will. Further, although petitioner argues that he was deprived of food and water, the record is devoid of supporting evidence.

Petitioner also argues that the circuit court erred in allowing the presentation of prejudicial assumptions made by the police in violation of the West Virginia Rules of Evidence. Specifically, officers testified that the scent of the liquid in a popcorn canister found in a dumpster smelled like a burning agent.[4] Officers also described a small wound on petitioner's cheek as a defensive wound, despite petitioner's testimony that he had cut himself shaving. Petitioner further complained that the officers' testimony that petitioner was "extremely nervous," was "sweating,

---

[4] Several items, including a can of paint thinner, were recovered from a search of petitioner's bedroom.

breathing hard," and that "you could see basically his heart pumping through his chest" was inappropriate in light of the fact that he appeared at the police station voluntarily. Per petitioner, these were just the first impressions or assumptions of the officers, and this testimony was highly prejudicial to petitioner. Respondent maintains that the statements complained of by petitioner are "rationally based upon the witness's perception" and are specifically allowed pursuant to Rule 701(a) of the West Virginia Rules of Evidence. We agree with respondent.

Rule 701 of the West Virginia Rules of Evidence governs the testimony of lay witnesses at trial.[5] We have held that

> [i]n order for a lay witness to give opinion testimony pursuant to Rule 701 of the West Virginia Rules of Evidence, (1) the witness must have personal knowledge or perception of the facts from which the opinion is to be derived; (2) there must be a rational connection between the opinion and the facts upon which it is based; (3) the opinion must be helpful in understanding the testimony or determining a fact in issue; and (4) the opinion must not be based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Syl. Pt. 1, *State v. Johnson,* 238 W. Va. 580, 797 S.E.2d 557 (2017). Further, this Court has explained "[t]he determination of whether a witness has sufficient knowledge of the material in question so as to be qualified to give his opinion is largely within the discretion of the trial court, and will not ordinarily be disturbed on appeal unless clearly erroneous." Syl. Pt. 4, in part, *State v. Jameson*, 194 W. Va. 561, 461 S.E.2d 67 (1996).

All of the testimony and evidence that petitioner argues should have been excluded were based upon the officers' personal observations. Moreover, the testimony of which petitioner complains was subject to pretrial motions, which were thoroughly reviewed by the circuit court. Inasmuch as the testimony falls within the confines of Rule 701, the circuit court exercised its discretion in allowing the testimony, and the rulings are not clearly erroneous, we refuse to disturb these rulings on appeal.

Next, petitioner challenges the sufficiency of the evidence. As to a sufficiency challenge, we have held that

---

[5] Rule 701 provides:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
(a) rationally based on the witness's perception;
(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

[w]hen a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict. This rule requires the trial court judge to resolve all evidentiary conflicts and credibility questions in the prosecution's favor; moreover, as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt.

Syl. Pt. 2, *State v. LaRock*, 196 W. Va. 294, 470 S.E.2d 613 (1996). Further,

[t]he trial court's disposition of a motion for judgment of acquittal is subject to our *de novo* review; therefore, this Court, like the trial court, must scrutinize the evidence in the light most compatible with the verdict, resolve all credibility disputes in the verdict's favor, and then reach a judgment about whether a rational jury could find guilt beyond a reasonable doubt.

*Id.* at 304, 470 S.E.2d at 623.

Upon our review of the trial transcript, we find that petitioner did not meet this heavy burden. Petitioner was charged with first-degree murder, but he was found guilty of the lesser-included offense of second-degree murder. He argues that the evidence presented at trial does not support this finding and that the only way he could have been convicted would have been for the jury to infer the murder through the introduction of his domestic violence protective order. We disagree.

Second-degree murder, a statutory crime codified at West Virginia Code § 61-2-1, is defined as "all other murder" that is not murder in the first degree. We recently held that "[m]urder in the second degree is the unlawful, intentional killing of another person with malice, but without deliberation and premeditation." Syl. Pt. 2, in part, *State v. Drakes*, ___ W. Va. ___, 844 S.E.2d 110 (2020).

After the close of the evidence at petitioner's trial, the court instructed the jury as to the elements of both first-degree and second-degree murder. At trial, there was evidence presented that established petitioner was at the victim's house near the time of the murder. Further, petitioner volunteered to police that his DNA would be on the victim's knives, one of which was the murder weapon, prior to being advised that the murder weapon was a knife. Applying our standard of review, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of second-degree murder. This Court will not substitute its judgment for that of the jury and undertake credibility determinations of the parties and the witnesses.

Finally, petitioner asserts that the circuit court erred when it failed to grant his motion for a new trial. We have recognized for some time that "[t]he question of whether a new trial should be granted is within the discretion of the trial court and is reviewable only in the case of abuse." *State v. Crouch*, 191 W. Va. 272, 275, 445 S.E.2d 213, 216 (1994). More recently, we discussed that "Rule 33 [of the West Virginia Rules of Criminal Procedure] enables a circuit court to grant a

new trial to a defendant if required in the interest of justice." *State v. Woodrum*, 243 W. Va. 503, ___, 845 S.E.2d 278, 282 (2020).

In *Woodrum*, we held

Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.

*Id.* at Syl. Pt. 1, in part.

Petitioner generally alleges that he is entitled to a new trial because of the issues addressed above. Inasmuch as we have determined that the circuit court did not abuse its discretion or act under some misapprehension of the law or the evidence, we find that petitioner is not entitled to this relief.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** March 23, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison

**NOT PARTICIPATING:**

Justice William R. Wooton